## Union Bank of Louisiana *v* Ira Bowman.

A purchaser who, as part of the consideration of his purchase, stipulated with his vendor to pay a debt due by him, may when sued by the person to whom the debt was due, set up the same equities that he has against the vendor himself. The creditor and the person to whom the debt was due might, by consent change the relation under the stipulation and thus cut off the equities.
C. C. 1884, 1896.

APPEAL from the District Court of the parish of East Feliciana, *Sterling*, J.

W. D. *Winter*, for plaintiff, cited *Arnous* v. *Davern*, 18 La. 42. *Lejeune* v. *Hebert*, 4 A. 59. *Carrollton Bank* v. *Chapman*, 8 Ann.

E. T. *Merrick* and R. J. *Bowman*, for defendant and appellants:

The bank being a stranger to the contract between *Gayle* and the defendant the consideration of that contract as to her were *res inter alios acta*, and she cannot be affected by any of the equities that may exist between the parties to the contract.

In support of this proposition the plaintiff relies on the case of *Arnous* v. *Davern et al.* in the 18 La. p. 42, and the case of *Lejeune* v. *Herbert*, 4 An. 60. In the first case the defendants had assumed to pay to the plaintiffs the promisory notes of their vendor, and they resisted their payment because a street upon which the lots were situated had not been opened within the time specified by their vendor. Nothing was said about the opening of the street in the contract. The decision of the court was rendered according to the rules applicable to commercial paper, as is apparent from the language of the decision: "If, instead of assuming to pay *Locket's* notes due at a future day, the defendants had given their own notes, payable to the order of their vendor at the same periods, and they had come into the hands of the plaintiffs without notice of any latent equity between the original parties, we are of opinion he would be entitled to recover. How is the case varied when the engagement is made directly with the present plaintiff, by whom the stipulation is accepted, especially when nothing is said about the opening of a street within a given time?" From the language of the court in this case, we think we are warranted in concluding that if the notes assumed by the defendants had been past due, or if the contracts had contained a stipulation that the street should be opened within a given time, the decision would have been different; for we cannot believe that the court would give facts as reasons in support of its decision unless the reverse of those facts would lead to a different opinion. This interpretation is in accordance with a decision in the case of the *City Bank of New Orleans* v. *Desban et al.*, 1 Rob. 570, in which one of the defendants had assumed to pay a note in favor of a third person, and resisted its payment on the ground of a failure of consideration. The court sustained the defence, because the bank, although not orignally privy to the contract between the defendant and his vendor, yet was acquainted with the consideration. It is evident that each of these cases were decided with direct reference to the commercial law. The first in favor of the plaintiff, because the notes assumed directly with the plaintiff were due at a future day, and the holder was not subject to the equities between the parties to the bill. The second was decided against the plaintiff, because he was informed of the consideration for which the bill was given. They only re-affirm a long established rule of commercial law, and if they were decided without reference to it, they would be irreconcilable with each other.

UNION BANK
*v.*
BOWMAN.

SLIDELL, C. J. In 1833, *Gayle* and *Wife* became stockholders of the *Union Bank* to the amount of forty-eight shares, mortgaged therefor certain lands and slaves, and availed themselves of the credit allowed by the charter by obtaining a loan, for which a bond in the usual form was given. In 1834, *Gayle* and *Wife* sold the land and shares of stock to *Bowman* for $5,284. *Bowman* gave his notes for $3000, and for the residue of the price, assumed the payment of the debt to the bank. He paid two instalments in 1835 and 1836, leaving a balance due with interest, for which, the bank now asks that the land be sold, and also a judgment against *Bowman* personally. There was a decree in favor of the Bank in the court below, and the defendant has appealed.

The defence was that at the time of the sale by *Gayle*, a large portion of the land was in the possession of one *Bowles*, from whom the defendant was subsequently obliged to purchase; that another large portion was and still is in the possession of one *Lizzenby*, and that the quantity sold was otherwise deficient. That *Lizzenby* had taken proceedings before the United States Register and Receiver to have the whole claim of *Gayle* set aside as obtained through fraud.

At the trial the defendant offered evidence to support the above defence, which was opposed by the plaintiff, and excluded by the court below, substantially upon the ground that the Bank could not be affected by any equities existing between *Bowman* and *Gayle*, and that it was not pleaded, and did not appear that the defendant had even given any notice to the Bank of the equities against *Gayle*.

In this ruling we think the court erred. It is true that one in whose favor a stipulation is made by another, may bring an action to enforce it, though not a party to the contract. This is permitted by express provisions of our Civil Code and Code of Practice. C. P. 35. C. C. 1884, 1896. These Articles, however, do not estop the person making the stipulation from setting up equities; and the right to do so must be determined by a recurrence to such general principles of law and justice as regulate the subject of contracts, and especially the contract of sale.

Under what circumstances and for what consideration was it that *Bowman* promised to pay the debt due by *Gayle* to the Bank? It was in a contract of sale, and as part of the price of a sale. He bound himself in the quality of a purchaser. As between him and *Gayle*, the latter could not expect the fulfilment of his promise to pay so much of the price in that mode, if the consideration of the promise had totally failed, or failed to such an extent as to authorize the cancellation of the sale; and if there was a material partial failure, in that at least a reduction of price. *Gayle* warranted the title of the land sold, and the liability of the buyer was dependent upon the fulfilment of the warranty, and qualified by all the reservation which the law makes in favor of the buyers in such cases. By what right can the Bank claim an absolute character for a promise, which, by the very nature of the transaction, was qualified? It seems to us quite clear she cannot. The promise to pay the Bank was a promise *sub modo*—a promise to pay so much as part of the price of a sale, and justly subject to the defences incident to such a promise. We do not say that subsequent action between the person so promising and the third person in whose favor the promise is so made, might not change the character of their relations and convert the promise into a positive or qualified obligation, unaffected by the original equities. For example, if the Bank had subsequently dealt with *Bowman* as its sole debtor, and he had voluntarily assumed that

attitude, each agreeing that *Gayle's* liability should be waived, or if in any other way at the instance, or with the consent of *Bowman*, the Bank had been put *in duriori casu* as to its claim on *Gayle*, it might be just to say that *Bowman* should pay the Bank what *Gayle* could not equitably demand from him. But we do not find in this case any such equitable considerations supervening to affect *Bowman's* liability. The mere fact that he made two payments on *Gayle's* bond, which were credited in account to *Gayle*, the stock still standing in *Gayle's* name, and the bond and mortgage remaining unchanged, does not seem to us as enlarging the extent of *Bowman's* liability under the covenant in the deed of purchase. We cannot assent to the broad language of the court in *Arnous* v. *Davern*, 18 La. 45 ; and it cannot be reconciled with what was intimated in *Flower* v. *Lane*, 6 Martin N. S. 152. A very strong argument by analogy, in support of the doctrine we now recognize, may be found in Art. 711 of our Code of Practice, and in the observations of *Troplong* on the right of the buyer, who has been evicted, to recover the price he has paid, not only from his vendor, but from the creditors of his vendor, to whom he has consented to pay it ; a departure from the principles of the Roman Law which he founds upon the 1377th Article of the Napoleon Code, corresponding to Article 2288 of our own. See Troplong vente No. 498.

As to so much of the defence as rests on the fact that no transfer of the stock has been made to *Bowman* on the books of the Bank, we attach no importance to it. If he desired the stock to be so transferred, he should have offered to comply with the requisitions of the charter in such case. Act of 1832, Sec. 29, p. 64.

While we think it necessary to reverse the judgment against the defendant personally, and remand the cause for a new trial, there is no reason to disturb so much of the judgment as enforces the mortgage upon the land, given by *Gayle* to the Bank.

It is therefore decreed that so much of the judgment as decrees the seizure and sale of the land mortgaged to pay the balance due, as in said judgment stated, be affirmed, and that as regards so much only of said judgment as condemns the said *Bowman*, personally, the judgment be reversed, and the cause remanded for a new trial, the plaintiff to pay the costs of the appeal.