No. 2323.—GERARD BRANDON v. WM. G. HUGHES.—STEPHEN DUNCAN et al. Intervenors.

Stipulations in an act of sale, in favor of third parties, can not be revoked after they have been accepted by those in whose favor they have been made, except in cases where just cause is shown, such as a failure of consideration of the contract, and the like.

In this case, a sale of real property was made, for a fixed price, with a stipulation by the vendee that he assumes all the mortgages existing on the property, and the amount of the mortgages is above the stipulated price of the purchase, for which difference the vendor executed his promissory note, in favor of the vendee, and afterwards, and before payment, he absconded. Held—That, by the terms of the contract, this amount was to have been paid before the vendee became bound to the mortgage creditors; that the vendor, by absconding, had placed himself in default, and that, by the failure of the vendor to comply with the conditions on which the sale depended, the vendee was entitled to have the sale rescinded, and to be discharged from any liability to the mortgage creditors, on account of the purchase of the property.

APPEAL from the Thirteenth District Court, parish of Tensas. *Hough*, J. *A. N. & H. N. Ogden*, for plaintiff and appellant. *Farrar & Reeves*, for intervenors, appellees. *E. D. Farrar*, curator ad hoc, for defendant.

LUDELING, C. J. This suit is brought to rescind a sale of real estate, situated in the parish of Tensas.

On the second day of January, 1863, William G. Hughes, a resident of Louisiana, sold to Gerard Brandon, of Mississippi, a plantation, containing, in the aggregate, about seventeen hundred and fifty acres, with the improvements, etc.

The consideration of this sale was seventy-five thousand dollars. At the date of the sale, there were mortgages on the property to the amount of $81,479 94, and taxes due on the property to the extent of $808 24, unpaid; all of which the purchaser assumed to pay, provided the vendor would obligate himself to the vendee to pay the difference between the price of the property sold and the amount of the mortgages and liens on the property, to wit: $7288 23, for which the

vendor executed his note, in favor of the vendee, payable on demand, and secured by a mortgage on slaves. Shortly after this sale, Hughes left this State, without paying the note given by him to his vender.

The creditors, whose mortgages were assumed by the vendee, in the act of sale above mentioned, do not appear to have had anything to do with the agreement aforesaid. But, on the twenty-sixth day of December, 1865, Stephen Duncan instituted a suit against William G. Hughes and Gerard Brandon, *in solido*, for $45,000, with interest, which sum, he alleged, was due by Hughes, and was secured by mortgage on the property sold, as aforesaid, and had been assumed by Brandon, as a part of the purchase price of the plantation.

Both defendants being absentees, curators *ad hoc* were appointed to represent them.

Others of the creditors of Hughes sued Brandon, under his assumpsit, and attached all his property situated in Tensas parish, including that which was not subject to the mortgages against Hughes.

On the sixteenth day of March, 1866, Brandon instituted this suit, for the rescission of the sale, upon the ground that, as a commutative contract, it was liable to rescission upon the failure of Hughes to pay the sum of $7288 18, as agreed upon at the time of the sale; that, by the terms of the contract, this amount was to have been paid before Brandon became bound, being in the nature of a condition precedent to the obligation of the purchaser. The petitioner averred that Hughes had absconded from the State, thereby placing himself in default, by his own act, and that the slaves, on whom a mortgage had been given to secure his obligation, had been emancipated by the Government; and that the largest mortgage creditor of Hughes had commenced proceedings against the property, although the sum of $7488 18 had not been paid to petitioner. He prayed that the sale should be rescinded, and that he should be discharged from all personal liability.

To the suits against him, he answered, denied that he ever contracted with any of the plaintiffs, creditors of Hughes, or had dealings of any sort with them. He denied that they had any claim, in law or equity, against him, arising out of his contract with Hughes, and set up against them the various grounds for rescission of the sale stated above, and he prayed that their demands against him be rejected.

On the twenty-seventh of June, 1867, three of the mortgage creditors of Hughes—John Watt & Co., T. H. & J. M. Allen & Co., and D. R. Carroll & Co., and T. J. Hays—filed an intervention in the suit of Brandon *v.* Hughes, and asked that the claim of Brandon for a rescission of the sale be refused, on the grounds, principally, that they had been lulled into security by the assumptsit of Brandon, and had therefore not interfered with Hughes, when he removed his personal effects and slaves out of the State.

On the eleventh of November, 1868, about fifteen months after filing

46

their intervention, the creditors aforesaid filed a supplemental petition of intervention, and joined in a release to Brandon, in the nature of a remittitur of his assumptsit to them, to the extent of $7288 24, the amount of Hughes' note to Brandon, with interest from the date of the note.

These suits were consolidated and tried, and there was judgment annulling the sale between Brandon & Hughes, and judgment in favor of all the creditors aforesaid, except Hays, against Brandon, for the amount of their respective claims, subject to credits for the amounts remitted by each.

The plaintiff, Brandon, has appealed.

The creditors and intervenors rely on article 35 of the Code of Practice, and articles 1884 and 1896 of the Civil Code, to sustain them in their position, that, having accepted a stipulation made for their benefit, in a contract to which they were not parties, it can not be revoked without their consent. The authorities, cited by them, go to establish that stipulations in favor of third persons can not be revoked, after they have been accepted by those in whose favor they were made, and that such third persons may sue to recover the thing stipulated in their favor. 5 La. 316, Pemberton *v.* Zacharie et al.; Mitchell *v.* Cooley, 5 Rob. 243.

But we do not understand the Code, or the decisions cited, to go further than to declare that such stipulations became *obligatory* by acceptance, and that they can not be revoked *without just cause.* It certainly can not be intended that a stipulation, in favor of third persons, shall be obligatory—*irrevocable*—notwithstanding the failure or the consideration of the contract; as, for example, if the property sold had not belonged to the vendor, and the purchaser was evicted from it. "An obligation without a cause, etc., can have no effect." C. C. 1887.

But is it strictly true that the contract between Hughes and Brandon contained a *stipulation pour autrui?* The assumption of the debts of Hughes, to the extent of $75,000, by Brandon, was for the benefit of Hughes, *the vendor*, and it was the price of the property bought.

Pothier says: "Ce n'est pas stipuler pour un autre, que de dire que la chose ou la somme que je stipule sera délivrée ou payée à un tiers désigné par la convention. Par exemple, si par le contrat je vous vends un tel héritage pour la somme de mille livres, que vous payerez à Pierre, je ne stipule point pour un autre; c'est pour moi et non pour Pierre que je stipule cette somme de mille livres: Pierre n'est dans la convention que comme une personne à qui je donne pouvoir de la recevoir pour moi et en mon nom." Obligations No. 57.

The creditors and intervenors can not pretend to have acquired greater rights than Hughes himself had; and the payments which were to be made to them, in discharge of Hughes' debts, depended on

his executing his obligations, according to the terms of the contract. C. C., article 2041;. 2 R. 526; 9 An. 194; Union Bank v. Bowman, 5 Rob. 246.

Hughes was under obligation to remove the incumbrances on the property, beyond $75,000; and, to insure the performance of this, he gave his note, and a mortgage on slaves, then owned by him. He did not pay his note, and he removed the mortgaged property out of the State. This was an active violation of his contract. The evidence shows, further, that he failed to pay the note when demand thereof was made, and that Stephen Duncan had taken proceedings to foreclose the mortgage which he held, for upwards of $45,000, against the said property bought by Brandon.

Under these circumstances, we think Hughes was in default, and that Brandon had a right to have the sale rescinded, for the non-fulfillment of the condition, upon which the sale depended. 2 An. 475; 3 M. 244, 249.

The offer, made long after the institution of this suit, by the creditors of Hughes, to remit a proportion of their claims, to equal the amount of the incumbrances on the property, beyond the price, came too late, even if it could be regarded as a compliance with the obligation of Hughes.

It is therefore ordered and adjudged that the judgment of the district court be avoided and reversed, and that there be judgment in favor of Gerard Brandon, rescinding the sale of the property from William G. Hughes to Gerard Brandon, described in the act passed before Franklin M. Baker, recorder of the parish of Tensas, State of Louisiana, on the second day of January, 1863. It is further adjudged and decreed that there be judgment in favor of said Gerard Brandon, against the plaintiffs, in the attachment suits against him, rejecting their demands, with costs in both courts.

Rehearing refused.