162 So. 783

**FREEDMAN v. RATCLIFF et al.**

No. 32816.

July 1, 1935.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

O'NIELL, Chief Justice.

Aaron Freedman brought this suit against Hugh Van Hoose, N. G. Stinson, Marx Levin, and 'Ernest R. Ratcliff, for a judgment against them in solido, on a promissory note, for $7,500. The note was signed and issued by Van Hoose on the 30th day of April, 1925, and was secured by a mortgage on a house and lot which he owned in Shreveport. He afterwards sold the house and lot to Stinson, who assumed the payment of the mortgage note. Stinson sold the property to Marx Levin, who also assumed the payment of the mortgage note. The plaintiff alleged in this suit that Marx Levin sold the house and lot to Ratcliff, and that he assumed the payment of the mortgage note. Van Hoose was sued as the maker of the note, and Stinson and Levin and Ratcliff were sued as having assumed the payment of the note. Van Hoose and Stinson and Levin failed to answer the suit, and judgment went against them by default. Ratcliff, answering the suit, denied that he had assumed the obligation to pay the mortgage note, and, in the alternative, pleaded that, if it should be held that he did assume the obligation, he did so only upon certain conditions which were never carried out, and that the consideration for which it might be said that he assumed the obligation failed. While the suit was pending against Ratcliff, and after Freedman had obtained the judgment by default against Van Hoose and Stinson and Levin, Freedman obtained a writ of fi. fa. and had the mortgaged property seized and sold by the sheriff, and bought it at the sheriff's sale for only $1,200. Ratcliff, thereafter, filed a plea of estoppel against Freedman, on the ground that he had elected to take advantage of the pact de non alienando, in the act of mortgage, and had caused the property to be sold to him by the sheriff with-

out service of a notice of seizure or other process upon Ratcliff. The judge of the district court held that Ratcliff's original plea, that he had not assumed the payment of the mortgage note, or had agreed to assume it only on a condition which was never fulfilled, was well founded, and that Ratcliff's plea of estoppel also was well founded. The judge therefore rejected Freedman's demand against Ratcliff. Freedman has appealed from the decision.

■■ The facts, so far as they are pertinent to the suit against Ratcliff, are not disputed. He entered into an agreement with Marx Levin, after Levin had bought the house and lot in Shreveport, to sell to Levin 8,000 acres of land in Grant parish, for $24,000, of which $500 was said to be paid in cash (but for which Levin gave his promissory note), and of which $7,500 was to be paid on the signing of the deed for the 8,000 acres of land in Grant parish; and the balance of the price of the land was to be made payable in two equal annual installments, to be secured by a mortgage and vendor's lien, to be reserved in the deed for the 8,000 acres of land. It was stipulated in the agreement that Ratcliff would accept, in lieu of the cash payment of $7,500, the house and lot which Levin owned in Shreveport, subject to the mortgage debt of $7,500. The exact language of that part of the stipulation was: "Said property to be accepted subject to a mortgage in the sum of Seven Thousand Five Hundred ($7,500.00) Dollars, now existing against same, which said Ratcliff agrees to assume." Ratcliff did not actually assume the obligation to pay the mortgage debt of $7,500, but merely agreed that he would assume the obligation if the agreement for the sale of the 8,000 acres of land in Grant parish should be carried out. Later, Levin asked Ratcliff for an extension of the time in which he was to buy the 8,000 acres of land in Grant parish, and, at the same time, gave Ratcliff a deed for the house and lot in Shreveport. Ratcliff did not sign the deed. He gave a written acknowledgment of receipt of the deed, and of the granting of the extension, and in the instrument he referred to the $7,500 mortgage note as "the mortgage note in the sum of $7,500, which I have agreed to assume." Ratcliff, therefore, never assumed the obligation to pay the mortgage note for $7,500, but merely agreed to assume it if the contemplated sale of the 8,000 acres of land to Levin should be consummated. The sale was not consummated, because Levin defaulted on his contract to buy the 8,000 acres of land. Ratcliff sued Levin for specific performance of his agreement to buy the 8,000 acres of land, and, in the alternative, for annulment of the contract, and for damages for the breach of the contract. On the trial of the suit, Ratcliff abandoned his demand for specific performance of the contract, and tendered to Levin a deed for the Shreveport property, which Levin refused. The jury gave a verdict for Ratcliff, annulling the contract for the sale of the 8,000 acres of land, and awarding

Ratcliff $3,500 damages for Levin's breach of the contract. A judgment was rendered and signed accordingly. Levin appealed, and, while his appeal was pending, he mortgaged the Shreveport property, for which Ratcliff had tendered him the deed. Ratcliff then filed a motion in this court to dismiss the appeal on the ground that Levin had acquiesced in the judgment, by mortgaging, and thereby virtually accepting, the Shreveport property. This court dismissed Levin's appeal, as to that part of the judgment which had annulled the contract for the sale of the 8,000 acres of land in Grant parish, on the ground that Levin had acquiesced in that part of the judgment. The court refused, however, to dismiss Levin's appeal from that part of the judgment which condemned him to pay Ratcliff $3,500 damages for breach of the contract. See Ratcliff v. Levin, 173 La. 931, 139 So. 10. Thereafter, the court affirmed the judgment against Levin for $3,500 damages. See Ratcliff v. Levin, 175 La. 49, 143 So. 1.

The facts which we have stated show that Ratcliff was never under obligation to pay the $7,500 mortgage note which is held by Aaron Freedman, plaintiff in this suit. Ratcliff was under an obligation, in favor of Levin, to assume the payment of the mortgage note—and in fact to pay it —provided Levin would carry out his contract to buy the 8,000 acres of land in Grant parish. But that obligation on the part of Ratcliff—which was only a con-ditional obligation—was not an obligation in favor of the holder of the mortgage note, and would not have become an obligation in his favor, without his acceptance of the stipulation in his favor, even if it had been converted into an unconditional obligation on the part of Ratcliff to pay the note, by Levin's carrying out his obligation to buy the 8,000 acres of land in Grant parish. Aaron Freedman, as holder of the mortgage note, has never had any more right to hold Ratcliff liable for the payment of the note than Marx Levin had. The obligation of one who buys property, subject to a mortgage held by a third party, and who assumes the payment of the mortgage debt as a part of the price to be paid for the property, is an obligation in favor of the party selling the property, and is not for the benefit of the holder of the mortgage. If the holder of the mortgage, in such a case, accepts the stipulation in his favor, he may enforce it against the new debtor, but has no better claim against the new debtor than the one who sold the property had. Tiernan v. Martin, 2 Rob. 523; Union Bank v. Bowman, 9 La. Ann. 195; Brou v. Becnel, 20 La. Ann. 254; Brandon v. Hughes, 22 La. Ann. 360; Janney v. Ober, 28 La. Ann. 281, 285; Vinet v. Bres, 48 La. Ann. 1254, 1264, 20 So. 693; Peoples' Homestead Association v. Garland, 107 La. 476, 479, 31 So. 892; Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1105, 37 So. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471..

Aaron Freedman in fact rejected the stipulation for Ratcliff to pay the mortgage note which Marx Levin owed, as far as the stipulation was in Freedman's favor, when he exercised his right, under the pact de non alienando, in the act of mortgage, by having the sheriff seize and sell the mortgaged property as the property of the mortgagor, Van Hoose, and without service of a notice of seizure or other process upon Ratcliff. The pact de non alienando, in an act of mortgage, does not prevent the mortgagor from selling the property, subject to the mortgage, but gives the mortgagee the right to ignore a sale of the mortgaged property and to proceed only against the mortgagor. When the mortgagee, in such a case, has availed himself of the pact de non alienando, by ignoring the transferee of the mortgaged property and having it seized and sold in a proceeding brought only against the original mortgagor, to satisfy the mortgage debt, the mortgagee cannot afterwards hold the transferee of the mortgaged property liable for the mortgage debt. Citizens' Bank of Louisiana v. Miller, 44 La. Ann. 199, 10 So. 779.

The plaintiff sought to prove that the defendant, Ratcliff, had acknowledged the obligation in question by collecting rent on the mortgaged property, and by paying the interest on the mortgage note, and the taxes on the property, and by taking out insurance on the property, with a loss-payable clause in favor of the holder of the mortgage note. All of these were only conservatory measures, for the protection of the mortgaged property, and to prevent a foreclosure of the mortgage; and all of these acts of Ratcliff were done while he held the deed for the mortgaged property and was relying upon Levin to carry out his agreement to buy the 8,000 acres of land in Grant parish. It does not appear that the amount of rent which Ratcliff collected exceeded the amount which he paid out for interest on the mortgage note and for taxes and insurance on the property; but, even if the rent collected did exceed these expenditures made by Ratcliff, while he was depending upon Levin to carry out his contract, the collections and expenditures made by Ratcliff did not constitute a waiver of his right to insist upon Levin's carrying out his agreement, as a condition on which Ratcliff had agreed that he would assume the payment of the mortgage note of $7,500.

The judgment appealed from is affirmed.