O’NIELL, Chief Justice.
 

 The plaintiffs are suing to collect nine promissory notes for $3,500 each, plus the stipulated interest and attorney’s fee. The notes were signed and issued by one Samuel J. Dessalles, but the obligation to pay the notes was assumed afterwards by Sol Weiss, who is the defendant in this suit. He pleaded in defense of the suit, that his assuming of the obligation was for the protection of Dessalles only, and not for the benefit of any holder or owner of the notes; that he assumed only a contingent or conditional obligation, dependent upon the condition that Dessalles should pay certain obligations which he, the defendant, owed, and which Dessalles assumed; that Dessalles defaulted on the obligation which he assumed; and that he, the defendant, was thereby relieved of his contingent obligation to pay the Dessalles notes, held and owned by the plaintiffs in this suit. The defendant pleaded that he was discharged from his contingent obligation by a judicial decree, rendered in a suit which he brought against Dessalles. The judge
 
 *37
 
 sustained the defendant’s plea, after hearing the evidence, and dismissed the suit. The plaintiffs are appealing from the decision.
 

 There is no dispute about the facts of the case. On November 28, 1928, the Moriartys, who reside in Chicago, sold to Dessalles a lot of ground in New Orleans, at the corner of Tulane Avenue and South Franklin Street, now Loyola Street. The price was $45,000, of which $10,000 was paid in cash, and for the balance of the price Dessalles issued his ten promissory notes for $3,500 each, secured by a vendor’s lien and mortgage on the property. The notes were made payable to the order of the maker and were endorsed by him. They were payable in one to ten years, respectively. The note that matured on November 28, 1929, was paid. The remaining nine notes are the notes on which this suit is founded. They bear interest at 7 per cent per annum from date, payable annually, and they provide for the payment of 5 per cent attorney’s fee in case of suit. The interest is paid to July 1, 1931.
 

 On June 28, 1930, Weiss and Dessalles entered into an executory contract, commonly called “exchange or trade agreement,” on a printed form furnished by a real estate agent. By the terms of this ex-ecutory contract, Weiss agreed to transfer to Dessalles four pieces of real estate in New Orleans, and Dessalles agreed to assume, as a part of the price, the obligation to pay certain promissory notes which Weiss owed to the Conservative Homestead Association, amounting to $16,900, secured by mortgages on the real estate which Weiss agreed to transfer to Dessalles. In the same contract, Dessalles, agreed to transfer to Weiss the Moriarty property, at the corner of Tulane Avenue and South Franklin Street, and as a part of the price of the property Weiss agreed to assume the debt represented by the remaining nine promissory notes which Dessalles owed to the Moriartys and which were secured by the vendor’s lien and mortgage on the property. The contract was a private instrument, not a notarial' act, and was not recorded.
 

 On September 30, 1930, the executory contract, called “exchange or trade agreement,” was executed and completed by the passing of five separate notarial acts of sale between Weiss and Dessalles. Dessalles bought Weiss’ four pieces of property and assumed the payment of the $16,-900 due to the Conservative Homestead Association and secured by mortgages on the property; and Weiss bought Dessalles’ property, and assumed the payment of Dessalles’ obligation represented by the nine unpaid promissory notes held by the Moriartys,' and secured by the vendor’s lien and mortgage on the property. The-price stipulated in the act of sale by Dessalles to Weiss was $40,300. It was stated in the act that the accrued interest on the-mortgage indebtedness of $31,500 amounted to $1,837.50, making the total indebtedness 'which Weiss assumed $33,337.50.. Hence, Weiss paid the difference, $6,962.50,, in cash, to Dessalles, and he acknowledged, receipt thereof in the act of sale.
 

 The so-called “exchange or trade agreement” was not mentioned in the act of
 
 *39
 
 sale from Dessalles to Weiss, or in anyone of the four acts of sale from Weiss to Dessalles. Each one of the five acts of sale was made as an independent and separate transaction, without any reference to any other sale, or agreement or transaction.
 

 On three different occasions-, as the Moriarty notes came due, Weiss asked for and obtained from the Moriartys an extension of time for the payment of the notes, and at the time of the first and second extension Weiss paid the annual interest. The extension agreements were prepared by Weiss in New Orleans, at the request of the Moriartys, and were sent by him to them, in Chicago, for their approval.
 

 The three extension agreements were all of the same tenor, the last one of them being dated December 8, 1931, and reading as follows:
 

 “Whereas, Sol Weiss, of New Orleans, Louisiana, has purchased the property located at the corner of Tulane Ave. and S. Franklin (Loyola) St., and
 

 “Whereas, said Sol Weiss has assumed from Samuel J. Dessalles, the original purchaser of said property, the outstanding mortgage and vendor’s lien against the same, in favor of the Estate of Moriarty and/or the heirs thereof, and
 

 “Whereas, the principal of said mortgage aggregates thirty-one thousand five hundred ($31,500.00) dollars, and
 

 “Whereas, the mortgage note in the sum of thirty-five hundred ($3,500.00) dollars, representing part of said mortgage indebtedness, matured on November 28th, 1930, and
 

 “Whereas, another mortgage note in the sum of thirty-five hundred ($3,500.00) dollars, also representing a part of said mortgage indebtedness, matured on November 28th, 1931, together with interest on the entire mortgage indebtedness, and
 

 “Whereas, the interest on said entire mortgage indebtedness has been paid up to July 1st, 1931, and
 

 “Whereas, by mutual agreement, the maturity of the mortgage note which matured, according to its terms, on November 28th, 1930, has been extended to November 28th, 1931,
 

 “Therefore, for the mutual consideration given and received, it is agreed by the holders and owners of said mortgage notes that the maturity of the mortgage note of thirty-five hundred ($3,500.00) dollars which fell due on November 28th, 1930, is hereby re-extended to May 28th, 1932, and that the maturity of the mortgage note of thirty-five hundred ($3,500.-00) dollars which fell due on November 28th, 1931, is hereby extended to May 28th, 1932, and that the payment-date of the interest on said entire mortgage indebtedness is also extended to May 28th, 1932; conditioned, however, upon the payment at the expiration of this extension of the accrued interest upon the entire indebtedness up until said date, May 28th, 1932, and |the payment also of said two mortgage notes which matured, respectively, on November 28th, 1930, and November 28th, 1931.”
 

 
 *41
 
 The instrument is signed by Sol Weiss, who is the only defendant in this suit, and by Margaret Moriarty and Daniel J. Moriarty and Jennie Moriarty, who are the plaintiffs in the suit. The instrument is not signed by Dessalles. He was not a party to any one of the three extension agreements.
 

 It is admitted in the defendant’s answer that, at the time when he obtained the extensions from the Moriartys, Dessalles had not been put in default or declared in default on his obligation to Weiss, to pay the debts which Weiss owed to the Conservative Homestead Association. Hence Weiss pleads that he was then legally bound to Dessalles not to permit the obligation which Dessalles owed to the Moriartys to become in default with them.
 

 On the 18th of May, 1932 — which was ten days before the last extension of the Moriarty notes would expire — Weiss sued Dessalles, in New Orleans, to cancel, rescind and annul the sale which Dessalles had made to Weiss of the property at the corner of Tulane Avenue and South Franklin Street (Loyola Street) on September 30, 1930, and to cancel, rescind and annul the assumption by Weiss of the mortgage debt due to the Moriartys. The cause of action which Weiss set forth in his suit against Dessalles was that Dessalles had defaulted on the obligation which he had assumed, to pay the debts which Weiss owed to the Conservative Homestead Association. Dessalles allowed judgment to go against him by default. Accordingly, the judgment was rendered against Dessalles on the 6th of July and signed on the 12th of July, 1932, cancelling, avoiding and annulling the sale which Dessalles had made to Weiss on September 30, 1930, of the property at the corner of Tulane Avenue and South Franklin Street (Loyola Street), and annulling the assumption by Weiss of the debt secured by the mortgage and vendor’s lien on the property.
 

 The Moriartys were not made parties to the suit which Weiss brought against Dessalles for cancellation of the obligation which Weiss had assumed, to pay the Moriarty notes. About the 1st of June, 1932, the Moriartys sent their notes to a real estate agent in New Orleans, with the request that he demand payment of Weiss. On the 3rd of June, 1932, the agent made demand on Weiss for the payment of the notes; and on the 18th of June, 1932, Weiss answered the demand, and in his answer said that he had filed suit against Dessalles to cancel his assumption of the- Moriarty notes, for failure of the consideration for which he had assumed the obligation.
 

 On October 11, 1932, the Moriartys sued both Dessalles and Weiss on the mortgage notes and prayed for a judgment against them in solido for the $31,500, plus the stipulated interest and attorney’s fee, and for recognition of the vendor’s lien and mortgage on the property at the corner of Tulane Avenue and South Franklin (now Loyola) Street. In answer to the suit Weiss set up the same plea that he is urging in defense of the present suit. On the trial of the suit against Weiss and Dessalles, counsel for the plaintiffs undertook
 
 *43
 
 to cross-examine Weiss on the subject of the three extension agreements that he had obtained from the Moriartys; but counsel for Weiss objected to the evidence on the ground that the plaintiffs had not sued on the extension agreements. The attorney for the plaintiffs then, realizing that he had not sued on the extension agreements, moved to discontinue the suit; whereupon the judge announced that he would allow the plaintiffs two weeks in which to sue on the extension agreements by means of a supplemental petition. Instead of filing a supplemental petition in that suit, the plaintiffs brought the present suit against Weiss alone, on his assumption of the debt and on the extension agreements. The defendant in this suit does not complain of the plaintiffs’ failure to discontinue their suit against Dessalles and Weiss. He refers to the matter merely as indicating that the plaintiffs have not abandoned their right to proceed against Dessalles if they fail to collect from Weiss.
 

 On the trial of this case the defendant offered in evidence the “exchange or trade agreement” made between him and Dessalles on September 30, 1930. The attorney for the plaintiffs objected to the evidence on the ground that the contract was only an executory contract, and was after-wards executed and completed, by the signing of the five separate notarial acts of sale. In support of the objection, the attorney for the plaintiffs invoked articles 2236 and 2276 of the Civil Code. The trial judge overruled the objection on the ground that it was aimed at the effect, and not at the admissibility, of the evidence. Our opinion is that the objection should have been sustained. Article 2236 of the Civil Code declares that an authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless the act be declared and proved a forgery-Article 2276 declares that parol evidence, shall not be admitted against or beyond what is contained in a written instrument or as to what may have been said by the parties before or at the time of signing-the instrument, or as to what may have been said by them since the signing of the instrument, with regard to any agreement that may have been had before or at the time of the signing of the instrument. This latter article is appropriate-only to such verbal testimony as might have been necessary to connect the executory contract, called “exchange or trade agreement,” with the authentic act of sale that was made ■ afterwards by Dessalles to Weiss. Article 2236 sustains precisely the plaintiffs’ objection to the evidence in this case. It makes no difference, though, whether the objection should be held to apply to the admissibility of the evidence or should be held to apply only to its effect, or its want of effect. The executory contract, called “exchange or trade agreement,” was merely a reciprocal agreement to buy and sell the properties, referred to, and to assume the debts referred to. When the contract was executed, it ceased to exist, and was superseded by the notarial acts of sale, each one of which acts is, as article 2236 declares, “full proof of the agreement contained in it.” There is nothing ambiguous, in the act of sale from Dessalles to Weiss.
 
 *45
 
 'The obligation which Weiss assumed, to pay the mortgage debt on the property which he bought from Dessalles,, was an unconditional obligation; and the obligation which Dessalles assumed, to pay the debt that Weiss owed to the homestead association, was an unconditional obligation.
 

 The so-called “exchange or trade agreement” was not recorded, and the Moriartys had no knowledge- whatever that any such agreement had been made until sometime after Weiss sued Dessalles to annul the sale which Dessalles had made to Weiss on September 30, 1930, and to annul the obligation which Weiss assumed in the act of sale, to pay the mortgage debt which Dessalles owed to the Moriartys. Therefore, assuming for the sake of argument that the so-called “exchange or trade agreement” had the effect of subjecting Weiss’ assumption to the condition that Dessalles should pay the mortgage debts on the lots which he bought from Weiss, the “exchange or trade agreement” had no such effect as far as the rights of the plaintiffs in this suit were concerned. When the Moriartys consented to grant Weiss an extension of time in which to pay the mortgage debt which he had assumed, the Moriartys did not know of the “exchange or trade agreement,” or know of any reason why Weiss might claim to be released from the obligation which he had assumed.
 

 The defendant offered in evidence on' the trial of this case the record of the suit in which he had obtained the judgment against Dessalles, annulling Weiss’ assumption of the debt due to the plaintiffs in this suit. The attorney for the plaintiffs objected to the evidence on the ground that they were not parties to the suit which Weiss brought against Dessalles, and, therefore, could not be affected by the judgment rendered against Dessalles. The objection was overruled. Our opinion is that the objection should have been sustained. But it is a matter of no importance that the record of that suit, including the judgment that was rendered against Dessalles and in favor of Weiss, is in evidence in this suit. It is sufficient to say that the judgment cannot have any effect against the plaintiffs in this suit.
 

 It may be conceded, for the sake of argument, that, when Weiss bought from Dessalles the property on which the plaintiffs have a mortgage and vendor’s lien, and assumed the payment of the mortgage debt due to the plaintiffs, the obligation which Weiss assumed was only for the protection of Dessalles, and was not an obligation which the holders of the mortgage notes could enforce in an action against Weiss. But that was not true after the holders of the mortgage notes accepted Weiss as a debtor. Rev. Civ.Code, art. 1890. Up to the time when Weiss dealt with the holders of the mortgage notes, by asking for and obtaining an extension of the time allowed to pay the notes, Weiss and Dessalles alone might have cancelled the sale which Dessalles had made to Weiss, and might have released Weiss from his assumption of the obligation to pay the mortgage notes. Up to that time Weiss and Dessalles were
 
 *47
 
 not obliged to have the consent of the holders of the notes to release Weiss from his obligation to pay the notes. 'But, when Weiss dealt directly with the holders of the mortgage notes which he had assumed — when he asked for and obfained an extension of the time in which he might pay the notes, and when he paid the interest and renewed directly with the holders of the notes his promise to pay the debt — he made the debt his debt to the holders of the notes.
 

 The granting of an extension of time in which to pay a debt is a valid and sufficient consideration for the promise of a third party to pay the debt. 13 C.J. p. 342, § 193, 17 C.J.S., Contracts, § 103; 6 R.C.L. p. 658, sec. 69; Am.Jur. p. 576, sec. 81; Isaacs v. Van Hoose, 171 La. 676, 131 So. 845; Wilkinson v. Adams, 179 La. 630, 154 So. 630. In the two cases last cited it was held that, where a mortgagee, without the knowledge of the mortgagor, consented to give to the grantee of the mortgagor further time in which to pay the mortgage debt, the mortgagor was thereby released from his personal obligation to pay the debt. We mention this merely to show what a serious consideration a mortgagee may give when he consents to give the grantee of the mortgagor further time in which to pay the mortgage debt. When Weiss obtained from the Moriartys the first extension of time in which to pay. the mortgage debt which Dessalles owed, the debt became Weiss' debt; and the extensions which Weiss obtained thereafter were extensions of time in which to pay his debt, and were for his benefit. Thereafter, it required the consent of the Moriartys to relieve Weiss of his obligation to pay the debt which he had assumed as a part of the price for which he bought the mortgaged property from Dessalles. Rev.Civ.Code, art. 1890; Mayor v. Bailey, 5 Mart., O.S., 321; Flower v. Lane, 6 Mart., N.S., 151; Woodward v. Dashiell, 15 La. 184; Dupuy v. Dashiell, 17 La. 60; Mitchell v. Cooley, 5 Rob. 240; Union Bank v. Bowman, 9 La.Ann. 195; Vinet v. Bres, 48 La.Ann. 1254, 20 So. 693; Freedman v. Ratcliff, 183 La. 1, 162 So. 783; 11 Tulane Law Review, 18.
 

 The defendant cites the following decisions in support of his plea that his obligation to pay the notes sued on was an obligation in favor of Dessalles only, and did not afterwards become an obligation in favor of the plaintiffs in this suit, viz.: Tiernan et al. v. Martin et al., 2 Rob. 523; Union Bank v. Bowman, 9 La. Ann. 195; Brandon v. Hughes, 22 La. Ann. 360; and Freedman v. Ratcliff, 183 La. 1, 162 So. 783. The facts in the cases cited, however, were different from the facts in the present case — as we shall point out.
 

 In Tiernan et al. v. Martin et al., 2 Rob. 523, a third party, named Moses Hall, entered into an executory contract with the defendants, Martin and others, by which Hall was to sell to Martin and others fifteen slaves and a tract of land which was then encumbered with a deed of trust in favor of the plaintiffs, Tier-nan and others; and, in part consideration therefor, Martin and others agreed, on certain.conditions, that they would as
 
 *49
 
 sume the payment of a- debt of $5,200 which Hall owed to Tiernan and others. It was stipulated in the written agreement between Hall and the defendants that the price for which the land was to be sold by Hall to the defendants was to be fixed by third persons chosen mutually by the parties to the agreement, and that, on the plaintiffs’ releasing their deed of trust on the land, the defendants were to pay to the plaintiffs the $5,200 which Hall owed. The contract between Hall and the defendants was never executed. Hall died, insolvent, leaving judicial mortgages on his property. Hall’s death made it impossible to fix the price of the proposed sale; and the judicial mortgages prevented the plaintiffs from releasing their deed of trust on the land. In other words, the conditions on which the defendants agreed that they would assume the debt which Hall owed to the plaintiffs could not be fulfilled; hence the executory contract between Hall and the defendants was not executed, and could not be executed. It was in these circumstances that the court said that the plaintiffs had not acquired any greater right against the defendants than Hall himself had. The court said:
 

 “The plaintiffs, therefore, cannot pretend to have acquired greater rights than Hall himself had; and it is clear that the payment which was to be made to them [the plaintiffs] in discharge of Hall’s debt, was to depend on his strictly executing his obligation according to the terms of the contract.
 

 * * *
 

 “In this case, it has been shown that the agreement cannot be perfected, as originally contemplated between the parties, owing tó Hall’s death in insolvent circumstances, and to the 'fact of the creditors having, in the mean time, obtained judgments against him, which operate as a lien on the property: and we concur with the inferior judge in the opinion, that, there being no valid conveyance of the land to the defendants, the plaintiffs cannot be entitled to reap the fruits of Hall’s imperfect contract and unexecuted obligation. Their claim must, therefore, be rejected.”
 

 The most striking difference between the case of Tiernan v. Martin and the present case is that in Tiernan v. Martin the defendants chd not receive a deed for the land which they were to receive in consideration for their agreeing to assume the payment of the debt which Hall [like Dessalles in this case] oyred to the plaintiffs. In Tiernan v. Martin, the contract which was violated, or which was never carried out, was the executory contract, in which alone the defendants agreed, on certain conditions which were never fulfilled, to assume the debt which Hall owed to the plaintiffs. In that case the defendants did not make any promise directly to the plaintiffs to pay the debt which Hall owed; and the defendants, in fact, were never unconditionally obliged to pay the debt which Hall owed to the plaintiffs. The decision in Tiernan v. Martin, along with others of the same purport, was explained in Vinet v. Bres, 48 La.Ann. 1254, 1264, 20 So. 693, 697, thus:
 

 
 *51
 
 “Those decisions proceed upon the same line, and are to the effect that stipulations pour autrui, to be of avail, must be accepted by the beneficiary; but they go no further, nor say anything more than is expressed by the Code. It declares that ‘a person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and, if such third person
 
 consents to avail himself
 
 of the advantage stipulated in his favor, the contract cannot be revoked.’ Rev.Civ.Code, art. 1890.”
 

 In the case of Union Bank v. Bowman, 9 La.Ann. 195, the bank held a mortgage on land belonging to a party named Gayle, and he sold the land to Bowman, who assumed, as a part of the price, the mortgage debt due to the bank. It developed afterwards that Gayle had no title to the land, and hence there was a failure of the consideration for which Bowman assumed the debt due to the bank. When the bank sued Bowman he pleaded the failure of consideration for the obligation which he had assumed; and the court sustained the plea, as far as any personal liability on the part of Bowman was concerned. The important point in that case was that Bowman and the bank did not deal with each other, as debtor and creditor, after Bowman assumed the debt which Gayle owed to the bank. The court virtually said that, if Bowman and the bank had consented to assume the relation of debtor and creditor, Bowman could not have pleaded successfully. against the bank the failure of the consideration for which he had assumed the debt which Gayle owed to the bank. This is said on page 196 of the report of the case in 9 La.Ann., viz.:
 

 “The promise [of Bowman] to pay the-Bank was a promise sub modo — a promise-to pay so much as part of the price of a. sale, and justly subject to the defences incident to such a promise. We do not say that subsequent action between the person so promising and the third person in whose favor the promise is so made, might not change the character of their relations and. convert the promise into a positive or qualified obligation, unaffected by the original equities.”
 

 In the present case, the consideration for which Weiss assumed the obligation, of Dessalles to pay the notes held by the Moriartys was the property which Weiss, bought from Dessalles. There has not been a failure of consideration in that respect, as there was in the case of Union Bank v. Bowman. The consideration for which Weiss afterwards gave to the Moriartys his direct promise to pay the debt was the extension of time which the Moriartys. gave, for the payment of the debt. There has not been a failure of consideration in that respect.
 

 In the case of Brandon v. Hughes, 22 La.Ann. 360, Brandon bought a plantation from Hughes, for $75,000, and assumed the . outstanding mortgages amounting to $81,479.94, and taxes amounting to $808.24, on the condition that Hughes would pay Brandon the excess, $7,288.18, for which amount Hughes gave Brandon his promissory note secured by a mortgage on certain-slaves. Hughes absconded with the slaves, and without paying the $7,288.18. It was
 
 *53
 
 held that the mortgage creditors of Hughes could not hold Brandon liable personally for the mortgage debts, because Brandon’s assumption of the debts was subject to a •condition, which was not fulfilled. In the ■present case, the assumption, by Weiss, of the debt which Dessalles owed to the Moriartys, was not made subject to any con■dition.
 

 In Freedman v. Ratcliff, 183 La. 1, 162 So. 783, the plaintiff sought to hold the defendant, Ratcliff, liable on a promissory note for $7,500, secured by a mortgage on ■a house and lot which belonged to a man named Marx Levin, and which Ratcliff, in an agreement with Levin, agreed to take over as part of the price of 8,000 ■acres of land which Levin agreed to buy from Ratcliff at the price of $24,000. Rat-cliff did not assume the payment of the ■mortgage note of $7,500, but merely agreed that he would assume the payment of the note if Levin would carry out his agreement to buy the 8,000 acres of land at the price stipulated. Levin failed to carry out his agreement to buy the 8,000 acres of land; and, for that reason, the court held, •of course, that Ratcliff was not liable for the payment of the note for $7,500, held by the plaintiff, and secured by the mortgage on Levin’s house and lot. The expression in the opinion rendered in the •case, to the effect that Freedman, as holder of the mortgage note,. could not have any better claim against Ratcliff than Levin had, must be taken in connection with the facts of the case.
 

 The defendant cites also the case of Peoples’ Homestead Association v. Garland, 107 La. 476, 31 So. 892, and the case of Allen & Currey Manufacturing Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980, 68 L.R.A. 650, 104 Am.St.Rep. 525, 2 Ann.Cas. 471. These decisions are not appropriate to the present case. In the Peoples’ Homestéad Association’s case, it was held merely that the assuming of the payment of the municipal taxes by a purchaser of the property assessed, who immediately resold the property to the tax debtor, did not give the city the right to sue the party who had assumed the payment of the taxes. It was held that the character of tax debtor arose only from the operation of law, and not from any contract between individuals; and that the effect of the contract was merely to give the tax debtor a right to recover the amount of the taxes from the party who assumed the payment, if the tax debtor should be compelled by the city to pay the taxes.
 

 In the Waterworks case it was held that the plaintiff, a private corporation, whose factory was destroyed by fire, had no right of action against the Waterworks Company for damages for an alleged violation of a contractual obligation on the part of the Waterworks company to supply the city’s fire department with water for extinguishing fires. Obviously, the principle which controlled the decision in that case has little or no application to the present case.
 

 Our conclusion is that the defendant is liable for the debt sued for.
 

 The judgment appealed from is annulled and reversed, and it is now ordered, adjudged and decreed that the plaintiffs,
 
 *55
 
 Daniel J. Moriarty, Margaret Moriarty and Jennie Moriarty, recover of and from the defendant, Sol Weiss, thirty-one thousand five hundred dollars ($31,500), together with interest thereon at seven (7) per cent per annum from July 1, 1931, and five (5) per cent attorney’s fee on the aggregate amount; the defendant is to pay also the costs of this suit; and the vendor’s lien and special mortgage, dated November 28, 1928, and recorded in Conveyance Office Book No. 443, folio No. 642, and in Mortgage Office Book No. 1391, folio No. 495, in the City of New Orleans, is hereby recognized as securing the payment of this judgment, including the interest, attorney’s fee, and all costs of this suit. This decree shall not affect any right which either of the parties may have against Samuel J. Dessalles.
 

 FOURNET, J., absent.