BAILES, Judge.
Plaintiff sues defendant for the sum of .$3,887.71 allegedly representing wages, compensation and commissions due on premiums of certain insurance policies written by defendant as the result of solicitations made “by plaintiff from March, 1963 through September IS, 1963. Defendant denied it owed plaintiff any amount whatever, asserting the compensation paid to plaintiff was in full for all services rendered. After trial on the merits, the lower court rejected the plaintiff’s demand and dismissed the action. Plaintiff appeals.
Simply stated, the question to be resolved 'herein is whether plaintiff was a commission agent of defendant or was he a salaried employee. The resolution of this question depends upon the construction and interpretation of the employment contract and supplemental agreement labeled Compensation Rider-Stabilization both entered into between the parties on June 20, 1955, duplicate originals of which are before us in the record.
We deem the pertinent portions of the ■contract and supplemental agreement to be the following:
(extract from contract)
“8. The total compensation of the Agent for all services rendered under this contract shall be as provided by the “Compensation Rider” hereto attached and by reference made a part thereof.”
(extract from ' Compensation Rider-Stabilization supplemental agreement)
“1. In full compensation for all services rendered by the Agent under the contract, including the servicing and countersigning of any policy or endorsement, whether or not secured by the Agent, the Company will pay to the Agent for each month of employment:
(a) During a training period ending on March 31, 1956, compensation of $336.21 per month, such compensation to determine the regular hourly rate of pay for 52-hour work weeks. In addition thereto, the Company will pay, with respect to each of the 12 hours worked each week in excess of 40 hours, compensation at one-half the regular rate.
Because of the nature of the services to be rendered by the Agent, the total number of hours spent by him each week in the Company’s employment will be solely within his own knowledge and largely within his own control, the Agent agrees to regulate his work so that his weekly hours of employment for the Company, during the training period, shall be fifty-two hours, neither more nor less. And after such training period,
(b) Monthly compensation (in no event less than $325.00 for each full month of work) determined as follows:
The year shall be divided into four production quarters beginning on March 1, June 1, September 1 and December 1 of each year, and into four compensation quarters, beginning on January 1, April 1, July 1, and October 1 of each year. The regular monthly compensation of the quarter shall be one-sixth of the aggregate of the following percentages of net written premiums recorded during the two next previous production quarters:
(1) 15% on personally secured (a) new policies, (b) replacement mortgage policies and (c) new coverages added by endorsement and in such case premium will be prorated to the next anniversary date of the endorsed policy, and
(2) 6^/2% on renewal policies which are the first or subsequent renewal of personally secured new policies.”
* * * ik * *
“7. Compensation will not be paid in the event the Agent has been absent from *346 work for a period longer than the benefit allowance period established by the Company for ‘Exempt’ employees.
“8. Any compensation payable to the Agent, under this contract or any supplement thereto, shall be payable only during the continuance of this contract. If this contract shall be terminated by either party irrespective of whether the Agent is subsequently employed by the Company under another contract, and inasmuch as any compensation payable hereunder is payable only during the continuance of this contract, therefore the compensation which shall have been paid to the agent at or before such termination, together with the payment of compensation, if any, then due the Agent under this contract at the time of its termination, but subject to the deduction of any amount due to the Company from the Agent, shall be in full settlement of all claims and demands upon the Company in favor of the Agent, and all further compensation which a continuance of this contract or of any supplement thereto might have secured to the Agent shall be waived.”
In considering the question before us herein we find our guidelines clearly set forth by the Supreme Court of our state in the case of Stack v. De Soto Properties, Inc. et al. (1952), 221 La. 384, 391, 59 So.2d 428, 430, wherein it stated:
“[2] Article 1945 of the Civil Code provides that agreements have the effect of law upon the parties, who alone can abrogate or modify them, and that the. courts are bound to give effect to all contracts according to the true intent of the parties when the language is clear and leads to no absurd consequences. Conformable with this principle, which is also stated in Article 1901 of the Code, this Court has many times observed that it is not with (sic) [in] its province to alter or make new contracts for the parties, its duty being confined to the interpretation of the agreements the parties have made for themselves, and, in the absence of any ground for denying enforcement, to render them effective. Moriarty v. Weiss, 196 La. 34, 198 So. 643; Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841.”
The plaintiff assigns three specifications, of error to the judgment of the trial court. These are:
1. The provisions of this contract are ambiguous. Therefore, they should be construed against the defendant-appellee who prepared the contract.
2. The forfeiture provisions of the contract are contrary to the laws and public policy of this state.
3. The plaintiff was designated a “countersigning agent,” certified by Allstate to the Office of the Commissioner of Insurance to be compensated wholly on a commission basis, and not “an employee” of the company.
On the first assignment of error, plaintiff argues his conclusion that the contract provisions cited above “are unusual, complex, ambiguous and susceptible of many and varied interpretations.” He argues “the contract apparently presupposes or contemplates a full adjustment or settlement of accounts between the parties at its termination.” We cannot see any merit in this argument. The portion of the contract on which plaintiff is relying and from which he concludes an ambiguity exists is paragraph 8 of the Compensation Rider-Stabilization supplement. From our painstaking reading of this paragraph we find it to be clear plaintiff is not entitled to any further compensation which a continuance of the contract would have secured to him. By the express conditions of the contract for the plaintiff to receive any compensation or remuneration therefrom the contract must be in existence. The contract no longer existed between the parties after September 15, 1963, by the termination thereof induced and confected by the resignation of plaintiff as of that date.
*347 It may well be'the contract is unusual and complex, as are many contracts of the business world, but there is certainly absent any ambiguity or many and varied interpretations susceptible of its terms in computing the compensation to be paid plaintiff for the services he rendered the defendant.
The manner of determining plaintiff’s compensation is actually very simple. This agreement provides for the employee or agent a minimum compensation, after expiration of the training period, of $325 for each- full month of work; the agreement then provides a mode or manner of calculating or computing the employee’s compensation which he is entitled to in excess of the provided for minimum. We would consider in this type endeavor the harder a person worked, the more adept he is in selling insurance, the more he worked, etc., the more compensation he is likely to earn, and that the formula is worked out in the agreement to provide compensation commensurate with the productivity of the employee. In furtherance of the purposes of the formula, the contract provides a computation of monthly compensation based on a percentage of net written premiums. Also, in order to stabilize the monthly compensation, the contract provides for four production quarters and four compensation quarters each calendar year. The employee’s or agent’s pay for any month of the year is dependent upon the average monthly production of the previous six-month period of two successive production quarters. The fact the system requires the keeping of records of premiums produced from the various kinds of insurance sold, and the addition and division of the monthly totals does not render the contract ambiguous nor susceptible of many and varied interpretations.
Plaintiff contends he is entitled, after termination of his employment contract, to receive, respectively, the 15% and &/%% of the premiums on the insurance policies he sold during the six month period prior to September 15, 1963. Nowhere in this contract is the plaintiff granted any vested interest or accrued commission on any policy of insurance delivered to a policyholder through his efforts. The plaintiff was entitled to receive a salary or compensation based on his ability, his efforts, and the results of his endeavors computed on the basis provided in the contract. This was merely a method devised for arriving at a certain and definitely determinable compensation as remuneration for employment.
The trial court recognized the lack of ambiguity in this contract, and assigned cogent reasons for it, holding:
“There is absolutely no ambiguity in the two documents that make up the contract in question. The plaintiff of his own volition resigned his position as agent of the defendants effective September 15, 1963 (Exhibit P-L). Referring to the Compensation Rider, plaintiff’s letter says that any compensation due the agent ‘is only due the Agent while the contract is in force.’ The letter then states that any compensation paid by commission and/or withheld to stabilize the agent’s pay and for which the agent has not received is due on or before the termination date of the agent’s contract.
“By the contract documents this agent was not paid a fixed commission of the policy premiums. Percentages of the premiums recited in the Compensation Rider determined the aggregate amount in each production quarter, an amount equal to one-sixth of which was paid to the agent as his monthly compensation, payable in the next compensation quarter.
“Plaintiff’s counsel contends that the contract provides for ‘hold back’ pay for March, April and May, 1963, and ‘agent’s commission or credit on premiums’ for June, July and August, 1963, and plaintiff claims a total of $3,887.71 for those months. This Court cannot read anything in the contract which could be entitled ‘hold back’ or which could be interpreted as any obligation of the company to pay an agent’s commission or credit on premiums in addition to one-sixth *348 of the aggregate of each quarter as specified. The reason the Court cannot read such an obligation into the contract is that the contract does not make any such provision. If there were any room to infer that kind of an arrangement from the language of Sub-paragraph (b) of Paragraph 1 of the Compensation Rider, then such an inference is readily and completely dispelled by the language of the last Paragraph 8 of that document. As I understand the position of counsel for plaintiff, he contends that if that last Paragraph 8 is enforced, the agent will be made to waive commissions due him on the business written in the interim immediately previous to the termination date of his resignation and that such an interpretation would deprive the plaintiff of his right to collect for that business. I am convinced that by the interpretation which this Court applies to the contract documents the plaintiff will not be made to waive any credit to which he is entitled or be deprived of the right to collect any amount due him for the reason that the contract has not created the obligation on the part of the defendant and there being no obligation to pay there is no right waived. Plaintiff received a monthly stipend, the amount of which was determined by the terms of the contract documents. The stipend stopped on the date selected by plaintiff. That is all there is to it and this Court cannot make anything else out of it.”
On considering the second assignment of error, suffice it to say we find plaintiff had no vested or accrued rights under the terms of the contract, and it, therefore, follows he possessed nothing to forfeit thereunder. He received full compensation for the services he rendered to the defendant according to and under the terms and conditions of the contract. The future benefits to which he was entitled were conditioned on the then existence of the contract. The contract was terminated by the resignation of plaintiff.
 The sole evidentiary basis for the plaintiff-appellant’s third assignment of error is an ex parte application for renewal of his agent’s license and his payment of the $2.00 license fee. Such a document is not proof of a fact not contained in the contract between the parties that he was a commission agent for defendant. There is no merit to this assignment of error. The record is totally barren of any certification to the commissioner of insurance of this state by defendant that plaintiff was compensated on a commission basis. Such application can be given no effect in altering the express terms of a valid employment contract such as is before us in this matter. '
In his brief, plaintiff-appellant states no Louisiana cases have been found interpreting a contract similar to that under consideration herein. Our search, too, fails to disclose any Louisiana case, however, defendant cites as persuasive the case of State Farm Mutual Automobile Insurance Company v. Hobbs, (Ky.App.) 1954, 268 S.W.2d 420. Both this cited case and the instant case involve the interpretation of similar employment contracts. In the cited case the employee’s compensation for services was calculated on a percentage of the premiums of insurance policies sold the previous sixth month, and there was a similar termination clause. Regarding the right of the employee or agent to compensation computed upon policies for the six-month period immediately prior to termination of the contract, the Kentucky court observed:
“Appellee’s agency was terminated on May 31, 1947, and it is conceded that appellant properly exercised the right of termination given it under the contract. The only question concerns the right of appellee to service fee compensation computed upon policies written during the six months preceding the termination. Appellee contends that under the terms of the supplemental agreement the company was always six months behind in the payment of service fees and that the payment of such fees should continue for six months after May 31, 1947, without regard to the fact that he was no *349 longer an agent of the company. Appellant insists that service fees were for extraordinary services rendered by agents in reporting, investigating, and handling claims and that the fee payable in each month was compensation for that particular month and that the manner of computing the compensation with reference to policies written in the preceding sixth month was merely a convenient method of determining the service fee compensation in the month for which it was paid.
¥ íjí »l* 4* ‡
“[3,4] In construing the contract before us, no authority is cited or found which is in point or analogous to the question presented. It is, of course, elementary that the agreement is to be construed according to the intention of the parties. In determining such intention, we must give consideration and effect to every provision, and we have no right to make a contract for the parties or revise the agreement while professing to construe it.
“The contract specifically provides that it shall become effective when approved at the home office of the company and shall automatically terminate upon the death, retirement, or termination of the agent’s appointment or service. A significant provision is that payment for the month during which retirement occurs shall be construed as the final payment. According to appellee’s theory, the contract was retroactive, in that its effective date was six months before its execution, or it remained in effect until six months after the termination of the agency. Either alternative ignores the express provisions of the agreement
“[5] The supplementary agreement, by its express terms, was in effect for a period of 14-1/2 months. Service fees were paid to appellee during this entire period of time. His construction of the agreement would require the payment of such fees for 20]/$ months. We are unable to concur in that construction. We think appellant has made all payments required under the contract and the petition should have been dismissed.”
For the reasons herein assigned, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.