State v. Carter, 197 La. 155, 1 So.2d 62, and authorities therein cited.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

O'NIELL, C. J., concurs in the decree on the ground that, according to the testimony of the defendant himself, there was no issue of self defense, the case being in that respect like State v. Bryan, 138 La. 338, 70 So. 318, but the chief justice adheres to the opinion which he expressed in State v. Thornhill, 188 La. 762, 178 So. 343, and in State v. Carter, 197 La. 155, 1 So.2d 62, and in several previous cases, that the word "proof" in article 482 of the Code of Criminal Procedure is used as being synonymous with the word "evidence".

14 So.2d 618

**FURLOW v. WESTOVER REALTY CO. et al.**

No. 36917.

May 17, 1943.

Rehearing Denied June 21, 1943.

Girard J. Fernandez, F. Rivers Richardson, and Wm. H. Talbot, all of New Orleans, for appellants.

Brian & Brian, of New Orleans, for appellee.

HAMITER, Justice.

The Westover Realty Company, Inc., is sued in this action by Thomas E. Furlow, an attorney at law, who seeks recovery of attorney's fees in the amount of $13,500 allegedly due him for services rendered to Dr. C. C. Buck and to certain corporations of which the latter was president. The asserted liability of that defendant is predicated on a written memorandum agreement, hereinafter described and to which plaintiff was not a party, executed by and between Dr. Buck, the Westover Realty Company, Inc., and F. Rivers Richardson.

Also made a defendant is Regal Realty, Inc., most of the stock of which is owned by the Westover Realty Company, Inc.;

but neither Dr. Buck nor his corporate associates, the beneficiaries of plaintiff's legal services, are impleaded in the suit.

Tendered to the petition were exceptions of vagueness, of misjoinder and nonjoinder of parties defendant, and of no right and no cause of action. These were overruled. Defendants also filed pleas of prescription of one, three, five and ten years which were referred to the merits.

The answers of defendants aver that their obligation to pay the attorney's fees to plaintiff was conditioned upon Dr. Buck's transfer and delivery to the Westover Realty Company, Inc., of certain described real property and that the condition was never fulfilled.

On the trial of the merits of the case there was judgment in plaintiff's favor in accordance with his prayer; and from it defendants appealed.

The above mentioned exceptions and pleas are re-urged here, but a consideration of them is unnecessary in view of the conclusion that we have reached on the merits.

In April, 1929, as shown by the record, Dr. C. C. Buck and certain corporations of which he was president, on the one hand, and Emile J. Rose and his associates, on the other hand, were adverse claimants to a large tract of land in Plaquemines Parish, Louisiana, containing thousands of acres, and litigation involving it was then pending between the two groups. Also the property, to the extent of an undivided seven-tenths interest, was affected by a tax title held by Suburban Coast Realty, Inc., an adjudication to that company having been made for the unpaid taxes of 1927; and the taxes for the year 1928 were due and unpaid.

With the view and purpose of settling their differences, all of the adverse claimants entered into a written contract on April 5, 1929. Under it Dr. Buck and his associates agreed to effect a dismissal of the demands then being urged by them in two pending law suits, and further to transfer, quit claim and convey unto Emile J. Rose all of their right, title and interest in the property. Those in the Rose group obligated themselves to execute a deed conveying the tract, with the name of the grantee or vendee omitted, it being understood that the conveyance instrument would recite a consideration of $18,600.71 to be represented by two promissory notes of the purchaser totaling that amount, both maturing on or before February 1, 1930, and secured by vendor's lien and special mortgage on the property.

The two deeds, according to the contract, were to be deposited in escrow with a designated bank; and the escrow agent would deliver both to any purchaser selected by Dr. Buck upon receipt of a redemption deed from the Suburban Coast Realty, Inc., upon receipt of written evidence showing payment of the 1928 taxes due on the tract, and also upon the execution by the purchaser of the mortgage and vendor's lien and the two notes totaling $18,600.71.

After the confection of that contract Dr. Buck commenced negotiations with F. Rivers Richardson, an attorney at law and the principal stockholder of defendant

Westover Realty Company, Inc., with the view of obtaining finances to effect the desired settlement; and on June 8, 1929, Dr. Buck's attorney, who was Thomas E. Furlow and plaintiff in this suit, addressed a letter to Richardson in which the land under discussion was described and the following was said:

"According to the titles, these descriptions embrace 88,000 acres, more or less, and Noel's Island which is excepted because it is not a part of the holdings in question, contains about 2,500 acres. (I am sending you herewith a map on which these lands are shown.)"

Furlow further stated in his letter:

"I understand that Dr. Buck is confirming to you the understanding between you with respect to your fee in this matter. I am again taking up with the Abstract Company the matter of guaranteeing the title and it is quite likely that all objections they have advanced will be eliminated in a conference on Monday. Of course, we should much prefer not having to give any guaranteed title, because of the expense, but I should like to know that one could be had."

On June 12, 1929, Dr. Buck wrote to F. Rivers Richardson as follows:

"If you will obtain for this company at once a satisfactory loan of $50,000 or more or a satisfactory oil lease, with a cash consideration of $50,000 or more, *on all or part of our 88,340 acres, more or less,* of land in Plaquemines Parish, Louisiana, as described on the map which I have handed you this day, we will pay you for services so rendered us, twenty per cent (20%) of the first $50,000, and 10% of any amount in excess of $50,000 so obtained.

"*I will agree to furnish a clear and unincumbered title,* free of all taxes (except those of the present year), *and free from all encumbrances, together with an abstract thereof.*

"It is understood that your services in the matter are limited to obtaining money on a loan or oil lease on the property, *any other business pertaining to legal matters being handled by my attorney, Thomas E. Furlow.*" (Italics ours.)

At the bottom of this letter is the notation "Employment accepted: F. R. Richardson."

Negotiations continued between Dr. Buck and Richardson, and on July 5, 1929, the following written instrument, was executed:

"Memorandum of Agreement

"Entered into between Dr. C. C. Buck, F. Rivers Richardson and Westover Realty Co., Inc.

"(1) Richardson will obtain a client who is to provide money in order to acquire a quitclaim deed to the property involved, pay the taxes, etc. The amount in all to be approximately $10,000.

"(2) The client will also pay the taxes for the year 1929 when due. Amount of approximately $20,000 due to the present owner of the property, Emile J. Rose, on or before Feb. 1st, 1930.

"Amount of $13,500 balance of fee of Thomas E. Furlow, which fee will be

payable one year from date of ·deed, or as funds may become available under the provisions of the memorandum in ·Art. 4.

"(3) Buck to have option to re-purchase the property within a year after the date of the agreement, upon reimbursing client the amount expended or assumed, including legal expenses and fees, with the addition of 20% of the whole thereof.

"(4) Any money received by client within the year from mineral royalties or bonus, or for trapping privileges, to be credited on the account called for in Arts. 2 and 3, 80% of any surplus thereof to be turned over to Dr. Buck, and 20% of such surplus to be paid to F. Rivers Richardson.

"(5) Richardson to receive for his fee for services in bringing parties together and confecting the agreement that may be called for, a fee in kind equal to 20% of the land involved, including all mineral or trapping rights therefrom, from Dr. C. C. Buck.

"I agree to the terms set forth in the above memorandum, including the stipulation that Richardson is to receive a fee equal to 20% of the value of the land involved.

"New Orleans, La., July 5th, 1929.
           "(Signed)    C. C. Buck

"We agree to advance the amount of $10,000, as set forth in the above memorandum, and to pay the amounts called for therein.

"New Orleans, La., July 5th, 1929.
"(Signed)  Westover Realty Company,
        Incorporated
"By: T. P. McLaughlin, Vice-Pres.
"I agree to the above.

"New Orleans, July 5th, 1929.
"(Signed)  F. Rivers Richardson."

It is to be noticed that neither the Rose group nor plaintiff Furlow was a party to the memorandum agreement. Also, the observation may be made, and this is shown by the wording of the instrument and the evidence in the record, that Dr. Buck would deliver to the Westover Realty Company, Inc., a deed to the entire property, being the one agreed to be executed by Rose and his associates under the first discussed contract, and the transferee would sign the two notes maturing on or before February 1, 1930, totaling $18,600.71, together with the vendor's lien and special mortgage; that the mentioned $10,000 would be used in obtaining the redemption deed from Suburban Coast Realty, Inc., and in paying the 1928 taxes; that the $20,000 was for the purpose of paying the described two notes; and the $13,500 attorney's fees payable to plaintiff Thomas E. Furlow was earned in performing legal services exclusively for Dr. Buck and his corporations and would be paid by Westover Realty Company, Inc., one year after it acquired title to the property.

It is to be further observed that the Westover Realty Company, Inc., is sought to be held liable in this action solely because of the stipulation in the memorandum agreement relating to the payment of attorney's fees; and this stipulation was formally accepted by plaintiff in a letter written approximately four months later.

Three days after the signing of the memorandum agreement the Westover Realty Company, Inc., obtained from Sub-

urban Coast Realty,. Inc., on paying the required sum, a quit claim deed covering seven-tenths interest in the .tract of land, the instrument reciting that it contained approximately 85,840 acres and was the "same property assessed in the name of E. J. Rose for the taxes of 1927 and purchased by this vendor at sale by the tax collector for the Parish of Plaquemines for the unpaid taxes due for the year 1927, * * *". Also, about the same time, the taxes for 1928 were paid by said Westover Realty Company, Inc.

Pursuant to the terms of the first described contract, Dr. Buck and his corporations caused the dismissal of their demands in the then pending litigation. Also, they executed the required quit claim deed in favor of Emile J. Rose which was deposited by Dr. Buck's attorney, Thomas E. Furlow, in escrow at the designated bank on August 1, 1929; but it was withdrawn three weeks later because of the failure of Rose and his associates to execute and place in escrow the deed which the contract demanded of them. The Rose group, however, did sign such a deed on December 20, 1929, it reciting the agreed credit consideration and naming James D. Lacey, Trustee, as the vendee. And on January 30, 1930, James D. Lacey, Trustee, transferred the property to the Tropico Manana Corporation of which Dr. Buck was president.

In the meantime, Dr. Buck wrote a letter to Richardson, of date December 2, 1929, making reference to a written demand for performance received from Rose and his associates, and he called upon Richardson

to carry out the terms of the memorandum agreement.

Richardson replied the next day as follows:

"Your registered favor of the 2nd. inst. addressed to me on the subject of the proposed deed, under contract dated July 5th, 1929, to the Westover Realty Co., Inc., is received.

"If you and your corporations are in position to deliver a clear title to 'A tract of land in Township 22 South, Range 30 East, and in Township 23 South, Range 31 East, containing *88,340* acres, in the north part of the N. E. Quarter of Noel's Island', *in a solid body,* and free of all legal entanglements regarding the entire tract, the Westover Realty Co., Inc., is prepared to carry out the contract of July 5th, 1929.

"It was upon the representation made by you that this tract of land contained 88,340 acres, that it was in a solid body, and that the title thereto was absolute that the Westover Realty Co., Inc., entered into the agreement referred to.

"Therefore the Westover Realty Co., Inc., calls on you individually, and on the Rectangle Ranch and on the Louisiana Agricultural Corporation to deliver to it a clear and complete title to 88,340 acres of land situated in the above Township, in a solid body, and with full and absolute title thereto, same to be subject to examination by the attorney of the Company.

"As a matter of fact neither you nor your corporations can deliver a complete title to 88,340 acres of land, nor in a solid body,

nor clear of any legal entanglements regarding same, some of the titles being clouded with adverse titles thereto.

"Under these circumstances you can readily appreciate that the Westover Realty Co. Inc., will not carry out a contract where you can not carry out your part of it, and in which you are not in position to do so.

"However, as I have explained to you, I am willing to do anything I can to save you from losing your property, and to that end I invite a conference at once."

On December 5, 1929, Thomas E. Furlow, Dr. Buck's attorney and the plaintiff herein, furnished to the Westover Realty Company, Inc., and to Richardson, his written legal opinion as to the title to the property; and therein he stated that there was a total of 47,860 acres, more or less, in the entire tract of land.

Dr. Buck did not follow up and support his demand letter of December 2, 1929, with a suit for specific performance. Rather, so it appears from the record, he realized his inability to himself perform and thereafter he considered the contract with Richardson abrogated. His obligation, as we appreciate the evidence, was to deliver a tract of land containing in excess of 80,000 acres. Such was the testimony of Richardson and it is corroborated by documents to which reference has above been made. Instead the tract contained approximately 48,000 acres as plaintiff's title opinion discloses.

After the property had been transferred to James D. Lacey, Trustee, on December 20, 1929, Richardson wrote to Lacey, who

was a financial backer of Dr. Buck, stating that Westover Realty Company, Inc., would quit claim to Dr. Buck the seven-tenths interest in the property acquired from Suburban Coast Realty, Inc., if paid the sum of $9,363.96. Most of this amount represented funds paid by Westover Realty Company, Inc., for the tax title and for the taxes of 1928. In reply Lacey referred Richardson to Dr. Buck.

Then followed correspondence between Richardson and Dr. Buck. In several letters the latter emphatically stated his intention and desire of acquiring the seven-tenths interest from the Westover Realty Company, Inc., as soon as he could obtain the required finances; but the acquisition was never effected. His action in this respect is indicative of the mentioned agreement abrogation.

This seven-tenths interest was retained by Westover Realty Company, Inc., until October 1, 1938, when it was transferred to Regal Realty, Inc., most of the stock of which is owned by the transferor. It was because of this transfer that the transferee was made a party defendant herein.

Notwithstanding plaintiff's assertion and claim that the attorney's fees herein sought were due and payable on July 8, 1930, by Westover Realty Company, Inc., under the terms of the memorandum agreement of July 5, 1929, this suit was not commenced until June 6, 1940, almost ten years after the stated maturity date. As before shown, it is resisted on the ground, among others, that payment of the fees was conditioned upon Dr. Buck's complying with his part of the agreement and there was a failure in

that respect. This defense, in our opinion, is good.

The undertaking assumed by Westover Realty Company, Inc., under the memorandum agreement was in favor of Dr. Buck and no one else. Plaintiff was not a party to the agreement, and he was to benefit from it only upon complete performance on the part of Dr. Buck. The latter, as shown above, did not discharge his obligation, and, therefore, has no claim against Westover Realty Company, Inc. Likewise, by reason of such failure, plaintiff is without recourse against that defendant. Plaintiff has no better claim than has Dr. Buck. See Freedman v. Ratcliff et al., 183 La. 1, 162 So. 783, and cases therein cited.

For the reasons assigned the judgment of the district court is reversed and set aside, and there is now judgment dismissing the suit of plaintiff and rejecting his demands, all at his costs.

ODOM, J., absent.