360 So.2d 642 (1978)
PAR-CO DRILLING, INC., Plaintiff-Appellee,
v.
FRANKS PETROLEUM INC., et al., Defendants-Appellants.
No. 6530.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1978.
Hargrove, Guyton, Ramey & Barlow, Thomas J. Wyatt and Ray A. Barlow, Shreveport, for defendants-appellants.
Brouillette & Kelly, Michael F. Kelly, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
In this suit plaintiff, hereafter Par-Co, seeks a money judgment against defendant, Franks Petroleum Inc., hereafter Franks, in the principal sum of $61,901.00 and recognition of a lien and privilege (LSA-R.S. 9:4862), on all oil or gas produced and accruing to the working interest in a certain well designated as the "Franks Petroleum, Inc. Southwestern Improvements No. 1 Well in Section 7, T. 2 N., R. 7 E., Avoyelles Parish, Louisiana". The sum sued for, plus ten percent attorney's fees, is the balance allegedly due plaintiff under a certain drilling contract dated August 4, 1976 entered into between Par-Co, as contractor, and Franks, as operator. Franks resists! payment of the amount claimed urging that plaintiff is not entitled to be paid such sum under the terms of the contract and in the alternative that the sum claimed represents expenses incurred as a result of plaintiff's negligence in the drilling of the aforesaid well for which plaintiff cannot claim reimbursement. The trial court rendered judgment in favor of plaintiff and defendants have suspensively appealed. On appeal defendants assert error in the trial court's construction of the contract and in the alternative urge that the trial court erred in not finding plaintiff's performance under the contract unworkmanlike.
We have carefully reviewed the record and conclude that the able trial judge, in his written reasons, accurately set forth the facts of this case and correctly disposes of all of the issues presented. Accordingly, we *643 take the liberty of adopting as our opinion the excellent reasons of the trial court:
"The Plaintiff filed this suit to enforce a privilege on certain properties in Avoyelles Parish, arising out of its drilling an oil and gas well on the property of Defendants. The Plaintiff claims the sum of SIXTY-ONE THOUSAND, NINE HUNDRED ONE and 00/00 ($61,901.00) DOLLARS as a balance due. The work and labors of Plaintiff were performed under a written contract signed by the original owner of the property who subsequently assigned its rights to other owners. All are joined as Defendants.
The court finds from the agreement, that Plaintiff was to drill to a certain depth, 7900 feet, at which time the well was to be logged and side-wall cores made. After this, the Defendant owners would have twenty-four hours to decide whether to set pipe in the hole for production, or to plug and abandon the hole. There seems to be no argument between the parties, that up to this decision point, the hole was at the risk and expense of Plaintiff. The argument here, arises in what took place after Defendants made the election to set pipe or production casing in the hole, and so notified Plaintiff.
In this case, as Plaintiff proceeded to go back into the hole, which had been drilled to 7916 feet, in order to condition it to set production casing, the drill pipe got stuck; the amount of money herein claimed by Plaintiff, is the total of the additional expenses, incurred in getting the drill pipe `unstuck' and other expenses leading to the making of a producing oil well.
The Plaintiff contends that after the defendants made the decision to set pipe for production, the day rate specified in the contract applied, and all expenses thereafter were to be paid by Defendants. On the other hand, Defendants contend, that under the contract, this well was to be a so-called "turn key" job, and all expenses were to be paid by Plaintiff, excepting the costs of the production casing.
The written contract used is apparently standard in the industry for this area. The testimony supports this view. The great preponderance of the evidence is to the effect that the risk of the hole shifts to the operator-owner once the last core provided for by the contract is furnished. At that point, in time the only other service to be provided is daywork rental of rig and equipment. The operator-owner may take 100 sidewall cores if he wants. He may want to drill deeper, or, he may decide to abandon the hole, in which case, the contractor-driller is to plug and abandon. But, if it takes the operator-owner three days to decide, he gets the first 24 hours of rig time `free'. If it takes three days or 30 days to run production casing, the first day only is `free'.
The control of the hole shifts as well. Prior to reaching contract depth the contractor-driller `controls' the hole, and the risks to be taken. Once the last core is furnished, the operator-owner makes all decisions. As Mr. Whitehead so convincingly testified, the contractors absolutely will not place the drill pipe back in the hole unless directed to do so by the operator-owners.
The risks encountered once the drill string is placed back in the hole are enormous. The purpose of doing so is to `condition' the hole. The logging tool and the sidewall cores scar and break the mud cake which supports the hole. At this time it may be 12-16 hours since the hole has been circulated with mud.
Nowhere does the contract state that the drilling contractor turnkeys a hole conditioned to accept production casing. Clearly the custom of the industry is that such a risk is the operator's unless the drilling contractor expressly assumes the risk. The contractor has the duty to condition the hole if instructed to do so by the operator but only on a daywork basis with all risk of the operation to be borne by the operator.
There is an additional defense made here, and that is that the contractor-driller was negligent in conditioning the hole *644 for the production casing. Therefore, under the contract the additional expenses claimed by Plaintiff are to be its loss. This is not supported by the evidence and the court finds no negligence here.
The various items claimed by Plaintiff are supported by cancelled checks which it paid. Defendant agrees (sic) in brief, that Plaintiff's paying these, without first submitting same to the defendant operator-owners, show that Plaintiff considered this as its obligations under the contract. The Court cannot accept this view. Plaintiff is in the business of drilling for oil. It contacted other specialists to get the drill pipe free. Its credit and reputation must be maintained. To make these subs wait for their money would be grossly unfair to them. They had a right to look for payment from the one who contacted and employed them. To conclude that these prompt payments by the contractor-driller, of the people whom he contacted for work, is an indication that it considered this its obligation under the contract with Defendants, is not a fair or legal conclusion.
The court believes and holds that Plaintiff has made due proof of its demands and is entitled to judgment as prayed for by it."
We consider it necessary to amplify the trial court's excellent reasons in order to dispose of certain arguments made by able counsel for appellants on appeal.
Appellants argue that since the drill pipe became stuck during the 24 hour period for which Par-Co was to furnish "free rig time to run casing or to P & A" under the contract, that the sum sued for is an expense incurred while the risk of the hole was Par-Co's. We discern no merit in this contention. There is no relationship between the provision allowing 24 hours free rig time and "risk of the hole". The 24 hours free rig time is simply a credit which is allowed under the contract to the Operator on any subsequent daywork charges incurred while the Operator is making a decision to run production casing or plug and abandon the well and/or while either of the latter tasks are in progress. The contract in question is not specific as to precisely when the "risk of the hole" shifts from the Contractor to the Operator. To that extent the contract is ambiguous. The trial court concluded, on the basis of clear, convincing and uncontradicted evidence, that according to custom in the industry, the risk of the hole shifts from the contractor to the operator once the last core provided for by the contract is furnished unless the contract specifically provides otherwise. Accordingly, he determined that the additional expenses were incurred at a time when the risk of the hole was the Operator's. We discern no error in this conclusion. It is well settled that custom of the place and the usual and customary manner of fulfilling like contracts is persuasive in determining the intention of the parties under a contract not specific in its wording. Terrell v. Alexandria Auto Co., 12 La.App. 625, 125 So. 757 (La.App.2nd Cir. 1930); Fontenot's Rice Drier, Inc. v. Farmers R. Mill Co., Inc., 329 So.2d 494 (La.App.3rd Cir. 1976); R.C.C. Article 1964. Additionally, in this connection we observe that, according to the evidence, the phrases in the contract giving rise to this ambiguity were authored by Frank's or its representative and accordingly, any doubt arising therefrom for want of necessary explanation must be resolved in favor of Par-Co. R.C.C. Article 1958.
In the alternative appellants argue that the "risk of the hole" was impliedly on Par-Co until such time as the hole is conditioned to receive production casing. In support of this contention appellants cite the case of J. C. Trahan Drilling Contractor, Inc. v. Cockrell, 225 So.2d 599 (La.App.1st Cir. 1969), writ refused 228 So.2d 482, 254 La. 922. The cited case is not authority for the contention espoused. In Trahan, unlike the instant case, the contract specifically imposed upon the contractor the obligation to produce a well bore capable of accepting casing.
Finally, with regard to appellants contention that plaintiff performed in an unworkmanlike manner, suffice it to say that we discern no error in the trial court's conclusion on this purely factual issue.
*645 For the above and foregoing reasons the judgment appealed from is affirmed at appellants' costs.
AFFIRMED.