363 So.2d 1309 (1978)
Greg FONTENOT
v.
MONSANTO COMPANY et al.
No. 9447.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
Leach, Paysse & Baldwin, Michael A. Britt, New Orleans, for defendant-third party plaintiff-appellant.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Barkley, Jr., Jack M. Alltmont, Michael R. Allweiss, New Orleans, for defendant-third party defendant-appellee.
Before REDMANN, LEMMON and BEER, JJ.
BEER, Judge.
Plaintiff, Fontenot, sued Monsanto Company (hereafter, "Monsanto"), Ford Motor Company, River Parish Maintenance, Inc. (hereafter, "River Parish"), and XYZ Insurance Company to recover damages for injuries sustained as a result of allegedly being thrown from and rolled over by a Ford tractor which he was driving. The tractor was owned by Monsanto. At the time of the accident, plaintiff was working within the course and scope of his employment by River Parish cutting grass on the Monsanto premises, in accordance with a contract between Monsanto and his employer, River Parish. While passing beneath a tree, the tractor's overhead roll bar came into contact with a tree branch which resulted in Fontenot being knocked off his tractor seat. It is alleged that the tractor continued to move forward with the bush hog still in operation, so that the tractor wheels rolled over him, causing severe injuries.
Fontenot thereafter dismissed his employer, River Parish Maintenance, from the *1310 tort suit, and the workmen's compensation insurer of River Parish Maintenance intervened. Monsanto filed a third party demand against River Parish, alleging a contractual indemnity by reason of certain specific provisions of the maintenance contract between Monsanto and River Parish. River Parish then filed exceptions of no right and no cause of action and/or a motion for summary judgment, contending, inter alia, that its contractual obligation of indemnity did not specifically provide for indemnity for Monsanto's alleged negligence and that no other basis for their liability existed or could exist. Following a hearing on the motions, judgment was rendered maintaining the exception of no right of action and thus dismissing Monsanto's claim against River Parish. As its basis for sustaining the exception of no right of action, the trial court concluded, in written reasons, that an employer can not contract away his statutory exemption from tort liability for injuries to an employee, citing LSA-R.S. 23:1032 (1950). Monsanto appeals.
Appellant's argument centers on the contention that R.S. 23:1032, et seq., does not unilaterally preclude express contractual indemnity agreements between a workmen's compensation employer and an alleged third party tortfeasor; and urges that the right to contractual indemnity from River Parish is contingent upon the jury's resolution of the factual issues determinative of Monsanto's alleged negligence, especially if it be only vicarious, derivative, constructive or secondary.
River Parish apparently acknowledges the basic validity of contractual liability vel non, but contends that no such agreement has been here confected which exposes them to Monsanto's third party claim. River Parish seems to be contending that the trial court was correct in simply determining that they had not, by the written agreement hereafter to be discussed, contracted away their "exclusive remedy" defense and, thus, could not be required to respond to Monsanto's claim which resultsdirectly from Fontenot's injury during the course and scope of his employment by River Parish.
The contract between the parties (drafted by Monsanto) provides for the obligation of the "Contractor" (River Parish Maintenance) to indemnify Monsanto as follows:
"17. The Contractor agrees to indemnify and save Monsanto harmless against any and all loss, damage, costs and expenses which it may hereafter suffer or pay out by reason of any claims, actions and rights of action, in law or equity, arising out of the performance of the Work and resulting from injuries or damage occurring to, or caused in whole or in part by, the Contractor (or his employes), any subcontractor (or its employes), or any person, firm or corporation (or the employes thereof) directly or indirectly employed or engaged by either the Contractor or any subcontractor.
"The Contractor agrees to make full reimbursement for any damage to existing property or property being installed, including loss of use thereof, which may arise from operations under or in connection with the Contract by the Contractor or by any of his subcontractors or by any person, firm or corporation directly or indirectly employed or engaged by either the Contractor or any of his subcontractors. Monsanto agrees, however, that the Contractor shall not be liable to Monsanto for loss of use resulting from damage to property under the Contractor's care, custody or control and waives all right to recover from the Contractor for damage Arising (sic) from the perils set forth and defined in the standard fire and extended coverage insurance policy."
Paragraph 18 of the contract requires the "Contractor" to obtain employer's liability insurance for employees who are not protected by the workmen's compensation statute, public liability insurance, and automobile liability insurance.
River Parish further contends that the purported indemnity agreement is vague, seeking, thus, to invoke the codal rule of strict construction of ambiguities against the drafter of the contract. La.C.C. art. 1958 (1870); Kuhn v. Stan A. Plauche *1311 Real Estate Company, 249 La. 85, 185 So.2d 210 (1966); Mills v. Fidelity & Casualty Company of New York, 226 F.Supp. 786 (W.D.La.1964). They argue further that the ambiguity in paragraph 17 is clarified in favor of their contentions by reference to the paragraph titled "insurance provisions," contending that Monsanto's requirement of employer's liability insurance for those employees not covered by workmen's compensation evidences Monsanto's intent to limit River Parish's obligation of indemnity to workmen's compensation-type benefits rather than tort liability.
River Parish expresses the premise that there are only three possible and material trial court findings with respect to Fontenot's tort claim: a) Monsanto without fault; b) Monsanto solely at fault; and c) concurrent fault of Monsanto and a third party.
They argue (a) that if Monsanto is not cast in judgment for plaintiff's injuries, they (Monsanto) would obviously have no cause of action for indemnification and (b) that the indemnity provisions do not include indemnification for loss resulting from Monsanto's sole negligence where such intention has not been expressed more precisely, citing Green v. Taca International Airlines, 304 So.2d 357 (La.1974); Arnold v. Stupp Corp., 205 So.2d 797 (La.App. 1st Cir. 1967); contra, Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App. 2nd Cir. 1967).
We certainly agree with the first observation (a) and, to some extent, with the second observation (b), although we are not obliged, at this point in the proceedings, to decide as a matter of law whether the contractual language between the parties lacks the requisite specificity to provide Monsanto with a cause of action for indemnification if it be determined, at the trial, that Monsanto is solely at fault.[1]
The plot materially thickens when we consider (c), labeled by River Parish's able counsel as "concurrent fault of Monsanto and a third party."
A finding of vicarious (or derivative, or constructive, or secondary, take your choice) negligence on the part of Monsanto and actual negligence on the part of River Parish, coupled with a fair reading of River Parish's hold harmless agreement with Monsanto, could, possibly, we believe, result in River Parish's tort exposure to Monsanto.
We are much influenced by Bagwell v. South Louisiana Electric Coop Association, 228 So.2d 555 (La.App. 3rd Cir. 1969), which held that there could be no indemnity from the workmen's compensation employer by the third party in the absence of a contractual relationship between the parties. The court stated:
"Although the `exclusive remedy' provision of the Workmen's Compensation Act relieves a statutory employer from the obligation to indemnify under the `tort-indemnity' theory, we think an obligation on the part of the employer to indemnify may be created by or may arise from a contract of indemnity entered into between the employer and the party demanding indemnification. We made that observation in Hebert v. Blankenship, 187 So.2d 798, supra."
The court did not enforce indemnity in Bagwell, but the reason seems to be only that there was not contractual language clearly evidencing an intent by the employer to indemnify the alleged third party tortfeasor. That is not the case here. River Parish is signatory to a contract containing provisions which require it to indemnify and hold harmless Monsanto Company from claims and actions arising out of its performance of the "work" required by the contract. Factual issues determinative of the contractual agreement are yet totally unresolved.
Though it is conjecture to perceive of factual circumstances which, if proven, would clearly support the effective enforcement of River Parish's agreement to indemnify Monsanto, we feel constrained to observe *1312 that it is also conjecture to perceive what the parties intended by the wording of the indemnity agreement if not to indemnify.
One cannot gainsay the observation that River Parish's categorically stated willingness to "save Monsanto harmless" from claims, etc., which arise "out of the performance of the work (undertaken by River Parish for Monsanto) resulting from injuries. . . to employees (such as Fontenot). . ." is a classic example of contractual liability or indemnification.
The exclusiveness of Fontenot's remedy against his employer, River Parish, is of no significance in interpreting the contractual commitment which River Parish has made to Monsanto. Companies who make these kind of indemnity agreements (and insurers who insure, for some agreed upon premium, their validity) have, we believe, made a calculated business decision so to proceed.
As long as Fontenot persists in his claim for damages arising from the performance of his duties at the Monsanto facility while he was employed by River Parish, Monsanto has an equal rightunder the terms of the particular contractual language contained in the agreement between Monsanto and River Parishto persist in its third party claim against River Parish for indemnification, Fontenot's exclusive remedy against River Parish (limited to workmen's compensation) to the contrary notwithstanding.
The factual issues concerning Monsanto's alleged exposure are, as yet, unresolved.[2] Accordingly the dismissal of Monsanto's claim for indemnity against River Parish was manifestly erroneous.
The judgment of the 29th Judicial District Court for the Parish of St. Charles is reversed, and the exceptions and motions are overruled. The cost of this appeal is to await final disposition of the litigation.
REVERSED, EXCEPTIONS OVERRULED.
NOTES
[1] For an excellent dissertation on this and other pertinent points, see Louisiana Bar Journal, September 1978/Vol. 26, No. 2, p. 90, "Contractual Indemnity: Interpretation and Effect," by Joel L. Borrello, Esq.
[2] Our review of the pleadings provokes the observation that pretrial discovery procedure could, perhaps, demonstrate a basis for the granting of summary judgment in behalf of third party plaintiff, Monsanto, and, thus, obviate that company's claim against River Parish.