380 So.2d 1232 (1980)
Robert A. RAYFORD, Plaintiff-Appellee,
v.
LOUISIANA SAVINGS ASSOCIATION, Defendant-Appellant.
No. 7416.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1980.
Rehearing Denied March 19, 1980.
*1233 Anderson, Leithead, Scott, Boudreau & Savoy, Everett R. Scott, Jr., Lake Charles, for defendant-appellant.
Ledbetter, Percy & Stubbs, William H. Ledbetter, Jr., Alexandria, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, and STOKER, JJ.
DOMENGEAUX, Judge.
In this appeal from a declaratory judgment we are called upon to decide whether the Louisiana Savings Association (defendant or Association) has the right, under the circumstances of this case, to (1) condition its approval of a sale between co-owners, who are also co-obligors, upon the payment of a loan transfer fee of one percent of the current principal balance, and (2) declare all sums secured by the mortgage to be immediately due and payable after one co-owner co-obligor has purchased the interest of the other two co-owners without the prior written approval of the Louisiana Savings Association.
The facts are as follows: On December 13, 1974, Rapides Savings and Loan Association[1] extended a loan of $704,800.00, secured by a conventional mortgage, to Robert A. Rayford (the plaintiff in this matter), Ted D. Price, and Walter E. Price, Jr. (the Prices). The mortgaged property, located in Rapides Parish, was owned in indivision by the three men and their wives, and is the site of the Pecan Grove Nursing Home. The interest rate on the loan was 9½% and the monthly installments were $6,222.68.
On August 28, 1978, in a letter to the Association,[2] Mr. Rayford requested permission of the Association "personally to assume the loan, in total, deleting Ted and Walter Price." The outstanding loan value at the time of this request was $675,000.00, and Mr. Rayford reported that the value of *1234 the mortgaged property exceeded one and a half million dollars.[3]
Via a letter dated September 12, 1978, the Association informed Mr. Rayford that his request to assume the mortgage was approved, subject to several conditions. The Association agreed that the interest rate would remain at 9½%, but refused to release Ted and Walter Price. The Association conditioned its approval of plaintiff's acquisition of the Prices' two-thirds interest in the mortgaged property upon the payment by Mr. Rayford of a loan transfer fee of 1% of the current principal balance. After listing several additional conditions,[4] the letter further stipulated that "all other terms and conditions of the original loan will apply" and left the offer open for fifteen days for plaintiff's acceptance of the agreement. This commitment was later extended to October 9, 1978, at the request of Mr. Rayford.
On October 6, 1978, Mr. Rayford purchased his co-owners' two-thirds interest in the Pecan Grove Nursing Home. The Association learned of Mr. Rayford's acquisition of the property and informed him in a letter written October 26, 1978, that until all conditions of the September 12, 1978, letter "are properly satisfied and the transfer fee paid" the Association had the option to declare all sums secured by the mortgage to be immediately due and payable pursuant to paragraph 17 of the Act of Mortgage and La.R.S. 6:837. The Association also informed Mr. Rayford that it would not draft his account for the monthly installments nor receive any payment on the loan until the requirements of the September 12th letter were complied with.
Plaintiff responded by filing a suit for declaratory judgment asking that he be allowed to deposit into the Registry of the Court (1) $6,742.94, representing the transfer fee allegedly due the Association; (2) $6,516.34 every month, beginning October 15, 1977, with such payments representing the monthly note payments as they became due.[5] The trial judge allowed this request. As further relief, plaintiff asked that he not be required to pay the 1% transfer fee. After trial on the merits the District Judge signed the judgment on May 18, 1978, favorable to plaintiff. The judgment decreed that there is no obligation for the payment of the 1% transfer fee by plaintiff to defendant; nor does defendant have the right to declare all sums secured by the mortgage to be immediately due and payable.[6] From this judgment defendant has appealed. We affirm.

*1235 I. ACCELERATION OF REMAINING PRINCIPAL
Do paragraph 17 of the mortgage contract and La.R.S. 6:837 include or apply to situations where one of three solidary mortgagors acquires the undivided interest in the mortgaged property from the other two co-owner mortgagors? We regard this question as one of first impression since no Louisiana cases disposing of the issue have been located.[7]
Defendant Association claims it has a statutory and contractual right to declare all sums secured by the mortgage to be immediately due and payable since Ted and Walter Price sold their interests in the Pecan Grove Nursing Home to Mr. Rayford without first obtaining the consent of the Association. In support of its claim, the Association relies upon La.R.S. 6:837 and paragraph 17 of its loan contract with Mr. Rayford and the two Prices. La.R.S. 6:837 provides, with respect to the Association's contention:
"§ 837. Conveyance of property securing loan
A. Whenever property is subject to a vendor's privilege or mortgage in favor of an association and, without the written consent of the latter, the property is sold or transferred, by contract, either with or without the assumption of the association loan, the loan and obligation held by the association shall at the option of the association immediately mature and become at once subject to enforcement according to law and to the terms of the loan contract...."
Paragraph 17 of the loan contract provides, in pertinent part:
"17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent,.... Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable."[8])
The trial court in its supplemental reasons for judgment, rejected defendant's argument that it has the right to accelerate, and held as follows:
".... paragraph 17 of the Mortgage and the statute do not refer to situations where one of the original obligors acquires the property interest of the other co-obligors.
LSA-R.S. 6:837 clearly contemplates a sale to someone who was not an original borrower. The last sentence of paragraph A of that statute provides: `In all such cases where the loan was assumed by the purchaser even without the consent of the association, the purchaser will be and remain liable in solido with the original borrower on the loan.' This contemplates a purchaser who was not previously liable on the loan.
Paragraph B of LSA R.S. 6:837 mentions the sale to a person `other than the party or parties originally executing the security instrument...." This further indicates that the statute does not apply to a situation where one obligor purchases the interests of the co-obligors.

*1236 For these reasons, the defendant does not have the right to declare all sums secured by the mortgage to be immediately due and payable."
We agree with the reasoning of the trial court and add reasons of our own why we are convinced that neither paragraph 17 nor La.R.S. 6:837 was intended to include the factual situation before us here. Our decision was reached after considering the historical justifications for the inclusion of such clauses in mortgage contracts, as well as the specific language of the statute and the mortgage contract itself.[9]

A. DUE ON SALE CLAUSES: JUSTIFICATIONS
A recent publication, sanctioned by the American Bar Association,[10] cites two primary reasons why due on sale clauses have become standard in mortgage contracts. Historically, the clause was designed to protect lenders from unapproved sales by their borrowers to possibly uncreditworthy purchasers. The report states, at page 894:
"... Only when the lender is satisfied with the qualities of the borrower and the security, based upon the lender's underwriting standards, will the loan be made. When this mortgaged property is then transferred, the lender seeks, through the requirement of consent to transfer, an opportunity to consider the purchaser as a prospective borrower, or the adequacy of the property as security in the purchaser's hands. The lender's right to accelerate in the event of an unapproved transfer thus provides the opportunity for the lender to prevent its involvement with an uncreditworthy purchaser or inadequate security, thereby enabling the lender to limit its exposure to lending risks which it otherwise would not agree to by either requiring payment in full of the secured debt, or modification of those risks prior to consent to the transfer."
Secondly, and more recently, lenders have utilized the due on sale clause to require a change in the terms of the loan instrument as a consideration for waiver of acceleration. Usually this consideration takes the form of an agreement by the purchaser to pay an increased interest rate for amortization of the loan balance. Concerning this recent trend the ABA report summarizes as follows, at page 896:
"Thus, the due-on clause, originally conceived and historically used to protect the lender's security became a means to protect a lender's economic position in the money marketplace. The lender uses the clause to prevent assumption of a low-interest rate mortgaged debt, either insisting upon payment of the secured obligation so that the money may be loaned out at prevailing rates, or by agreeing to waive exercise of acceleration upon purchaser's agreement to amortization of the loan balance at the current rate."

B. LOUISIANA'S DUE ON SALE CLAUSE
Although Louisiana's due on sale statute (R.S. 6:837)[11] does not particularize the reasons for its enactment into law, it is *1237 reasonable to assume that it was enacted for the same or similar reasons as those set out in the ABA's report. The defendant has observed in brief that R.S. 6:837(A) was originally enacted to overturn or correct an anomalous situation developed by early jurisprudence which had stated that the obligation of a purchasingassumer is only "in favor of the party selling the property, and is not for the benefit of the holder of the mortgage." See Freedman v. Ratcliff, 183 La. 1, 162 So. 783 (1935), and cases cited therein.[12]
Whatever its original intent may have been, paragraphs (A) and (B) of the statute clearly contemplated a situation where the property is transferred to some third party who was a stranger to the original loan contract, as the trial court correctly pointed out. Paragraph (A) of 6:837 speaks of a sale without the consent of the Association,
"... either with or without the assumption of the association loan.... In all such cases where the loan was assumed by the purchaser even without the consent of the association, the purchaser will be and remain liable in solido with the original borrower on the loan." (Emphasis added).
Such language can have no application here. Mr. Rayford was the original borrower and was already solidarily liable with the Prices for the entire amount of the loan. The term "assumption" is defined in Black's Law Dictionary, Revised Fourth Edition, (1968) as follows:
"The act or agreement of assuming or taking upon one's self; the undertaking or adoption of a debt or obligation primarily resting upon another, as where the purchaser of real estate `assumes' a mortgage resting upon it, in which case he adopts the mortgage debt as his own and becomes personally liable for its payment."
Although Mr. Rayford explained to the defendant that he wished to assume the entire mortgage, his only concern was to secure the release of the Prices, who might then be more agreeable to selling their interest in the property to Mr. Rayford. His desire to "assume" the loan we do not view as legally significant since he was undertaking no obligation primarily resting upon another; there was no mortgage debt to adopt since he was already its legal parent.
Paragraph (B) of 837, although not applicable here, also implies that transfers between co-obligors are not contemplated:
"In the event the ownership of the real estate security or any part thereof becomes vested in a person other than the party or parties originally executing the security instrument. ..." (Emphasis added).
Mr. Rayford was one of the parties originally executing the security instrument.

C. PARAGRAPH 17 OF THE MORTGAGE
The legitimacy of paragraph 17 of the mortgage contract is based upon the statute, which authorizes the due on sale provision and which provides for its enforcement according "to law and to the terms of the loan contract." The terms of paragraph 17 of the loan contract in no way suggest or provide that co-owner co-obligor transfers will activate the acceleration clause. On the contrary, paragraph 17 contains language which would indicate that only transfers to a stranger are anticipated. The sub-heading of paragraph 17 identifies the subject matter contained therein as "Transfer *1238 of Property; Assumption" which suggests that the two occurrences are related.[13] Also, paragraph 17 is concerned with transfers of the mortgaged property "by Borrower" but makes no provisions to cover the situation when the Borrower is also the purchaser, which is the situation here. Since we earlier decided that a solidary co-obligor cannot assume his own debt, a reasonable interpretation would be that paragraph 17 does not refer to co-obligor transactions, but instead applies to a transfer from a borrower[s] to a stranger[s] who may wish to assume the mortgage.
Defendant argues that the statute does not specifically exempt co-owner transfers from the general rule that outstanding loan obligations may be matured at the Association's option if its consent is not obtained prior to a sale of the mortgaged property by one of the Association's borrowers. Hence, the argument concludes, no such exemption should be inferred or created. Defendant also urges that language from paragraph 17 of the mortgage, "[i]f all or any part of the Property or an interest therein is sold ..." (emphasis added), is very explicit and is susceptible to only one meaningthat the lender's option to accelerate becomes choate when any transfer, even one between co-owner co-obligors, is made without the consent of the lender. Although the defendant's argument is plausible, the contract failed to expressly provide that transfers between co-owner co-obligors, made without prior consent of the lender, will activate the acceleration clause.[14]
Because we find that paragraph 17 of the mortgage contract is susceptible to two conflicting but reasonable interpretations, one which would include co-owner co-obligor transfers and one which would not, we find paragraph 17 to be ambiguous. Ambiguous phrases in contracts are strictly construed against the party who prepared the contract. La.C.C. Art. 1957 and 1958; Par-Co. Drilling, Inc. v. Franks Petroleum, Inc., 360 So.2d 642 (La.App. 3rd Cir. 1978); Fontenot v. Monsanto Co., 363 So.2d 1309 (La.App. 4th Cir. 1978). As the evidence establishes that this mortgage contract was a standard Rapides Savings and Loan mortgage prepared by the Savings Association we are compelled to adopt the interpretation most favorable to the plaintiff. Accordingly, we hold that the defendant, Louisiana Savings Association, does not have the right to exercise the acceleration clause of paragraph 17 because that paragraph does not apply to transfers between co-owner co-obligors.
We note another compelling reason why the due-on-sale clause of paragraph 17 should not be applicable in this case involving a co-owner co-obligor transfer. Since the statute was enacted for the protection of the savings association, there is no reason for its application here because the Association was in no need of protection from such a transfer. Uncontradicted evidence shows that Mr. Rayford was the only co-owner who actively sought the loan. He alone among the three co-owners managed and operated the nursing home. The loan was acquired solely through his efforts. The liability of the Prices was simply additional security. The Association was in no need of protection when Mr. Rayford acquired the complete ownership of the nursing home. His creditworthiness with defendant was already established and defense counsel admitted at trial that Mr. Rayford's credit was not questioned. Defendant's security has in no way been impaired by the transfer to Mr. Rayford. Defendant still holds a first mortgage over the entire property, *1239 including all improvements made since the mortgage was executed, and the Prices, together with Mr. Rayford, are all still solidarily liable for the debt.
Defendant does not contend that it will be injured by being denied the right to renegotiate the interest rate. Indeed, defendant was willing to approve the transaction and continue the mortgage at the original interest rate of 9½%.

II. TRANSFER FEE
The Association claims its entitlement to a transfer fee arises out of its contractual ability to withhold its consent to a transfer of the property. Payment of the transfer fee was one of the conditions the mortgagor was required to meet in order to secure the Association's consent to the transfer. However, since the Association did not have the right under the circumstances present here to accelerate the balance of the loan, its consent to a transfer was not essential. Since its consent was not needed for the transfer to take place, any conditions the Association sought to place upon the securing of its consent were meaningless. Thus, the Association is not entitled to a transfer fee.
The Association might not be entitled to the transfer fee even if the acceleration clause applied to co-owner co-obligor sales. As this issue is res nova, we again turn to the jurisprudence of our sister states for guidance. Continental Federal Savings & Loan Association v. Fetter, 564 P.2d 1013 (Okl.1977),[15] is a persuasive case which is factually similar to the case before us. There the mortgagee, acting pursuant to a due on sale clause in a mortgage contract, sought to accelerate the balance of the loan after a transfer of the property was completed without the consent of the mortgagee. The mortgagee had conditioned its consent upon the payment of a 1% transfer fee, which the purchaser refused to pay. The mortgage contract there, similar to the one here, had failed to provide for the payment of an extra fee before consent could be secured. Holding against the mortgagee, the Supreme Court of Oklahoma, said:
"Neither the mortgage nor the note contained a provision requiring payment of a transfer fee. The undisputed evidence was the actual transfer cost to Continental Federal was $100 and that comparable transfer figures for VA and FHA were $35. Printed contracts are interpreted most strongly against the party preparing the form. The rule of strict construction against the drafter of the instrument is particularly applicable in the case of a contract prepared by an expert or experienced party, and it has special force where it is sought to create and impose an obligation when none would otherwise appear.

We ... find that it was unreasonable and inequitable for appellant to impose a one percent transfer fee as a condition precedent to giving its consent to transfer the mortgage because neither the note nor the mortgage contained such a provision; it was not a bargained-for element of the note and mortgage; it bore no relationship to the actual cost of transferring the mortgage, and there was no jeopardizing of mortgagee's security." (Emphasis added)
The decision of the Oklahoma Court we think is logically and legally sound and would be applicable here.[16]
For the above and foregoing reasons the judgment of the District Court is affirmed. All costs are assessed against defendant-appellant.
AFFIRMED.

ORDER
The Application for Rehearing herein having been duly considered:
IT IS ORDERED that a Rehearing be, and the same is hereby, denied.
*1240 STOKER, J., votes to grant a rehearing limited to a reconsideration of that portion of our opinion for which we cite as authority to case of Continental Federal Savings & Loan Association v. Fetter, 564 P.2d 1013 (Okl.1977).
NOTES
[1] Rapides Savings and Loan Association was merged with Louisiana Savings Association effective July 1, 1975.
[2] All pertinent correspondence was introduced into evidence.
[3] The property had a purported value of $1,010,000.00 when the loan was first granted but Mr. Rayford informed the Association in his letter of August 28th that he had made additional improvements on the property.
[4] The other conditions, not at issue here, read as follows:

. . . . .
3. Attorneys for Louisiana Savings Association must certify good first lien and mortgage following the modification. Any expenses to be paid by you.
4. One certified copy of the act of sale and assumption which must contain a clause regarding escrowed funds, the hazard insurance policy and family homestead clause.
6. Approval of FSLIC, CLIC and our Participant prior to execution."
These conditions are not at issue so we express no opinion as to whether they could be validly imposed under these or different circumstances.
[5] The Act of Mortgage prepared by Rapides Savings & Loan called for a monthly payment of $6,222.68. Mr. Rayford deposited $6,516.34 a month into the Registry of the Court as the monthly payment. Nothing in the record explains this discrepancy.
[6] In the pleadings, neither party prayed for relief with respect to the Association's alleged right to accelerate the balance upon failure to obtain consent of the Association before transferring the mortgaged property. Thus, the Judge did not consider the issue in his original reasons for judgment. Only after defendant filed a motion for a new trial, contending that the entire controversy between the two parties could be completely resolved only if the Court disposed of the acceleration issue, did the Judge issue his supplemental reasons for judgment declaring that the Association did not have the right to accelerate under these circumstances. This ruling was incorporated in the judgment. Neither party has complained of this procedure so we will treat both issues as being validly before the Court.
[7] Taliancich v. Union Savings & Loan Association, 142 So.2d 626 (La.App. 4th Cir. 1962) is the only Louisiana case considering a similar clause in a mortgage contract. The Court held that the Association's denial of consent was a valid exercise of its contractual and statutory right. The statute creating the right was La. R.S. 6:770 which preceded 6:837. Taliancich is distinguished because it did not involve a transfer between co-owner co-obligors.
[8] Footnote by the Court of Appeal. Clauses such as the one sanctioned by R.S. 6:837 and found in paragraph 17 are commonly referred to as "due on sale" clauses in other jurisdictions.
[9] We have also looked to the jurisprudence of our sister states for guidance. However, none of the due on sale cases was concerned with the application of the clause to co-owner co-obligor transfers.
[10] "Enforcement of Due-on-Transfer Clauses", Report by the Sub-Committee on "Due-on" Clauses of the American Bar Association Committee on Real Estate Financing, located in the ABA's Real Property, Probate and Trust Journal, Volume 13, pages 891-940 (Winter, 1978).
[11] La.R.S. 6:837(A) was preceded by R.S. 6:770. The statute originally was enacted in 1932 as § 51 of Act No. 140 of the 1932 Regular Session of the Louisiana Legislature. The Act codified all the statutes of Louisiana dealing with homestead and building and loan associations.
[12] Freedman was criticized for use of this language by Professor J. Denson Smith in 11 Tul. L.Rev. 18, 34.
[13] We are cognizant of paragraph 13 of the mortgage contract which provides, among other things, that "[t]he captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof." We note the subheading to paragraph 17 only to illustrate the suggestive effect it may have upon mortgagors who may not be as thoroughly familiar with the terms of the contract as the defendant is.
[14] We express no opinion as to whether such a clause, if it were inserted into the contract, would be enforceable in this state, absent some showing that the transfer would be detrimental to the lender.
[15] This case contains an excellent summary of the jurisprudence pertaining to due on sale clauses.
[16] We express no opinion as to whether a reasonable transfer fee, designed to recover the actual cost of the transfer, would be allowed under proper circumstances.