STOKER, Judge.
The issue before us in this case concerns the amount of rent owed by the lessee, Huard’s Inc. Specifically, the question is whether under a percentage lease Huard’s is obligated to pay to the lessor a percentage of revenue derived from rental of television sets as well as proceeds of sales of television sets and charges for servicing them. The trial court held not and we affirm.
On August 3, 1976, Huard’s executed an agreement to lease retail space in a shopping center from Ogden, Jones & Douglas, a partnership. The lease was for a term of 60 months to begin when the space was ready for occupancy. The lease term ended on April 30, 1982. Rent for the premises was set at $1,500 per month plus 4% of “gross sales” in excess of $360,000.
At the time the lease was executed, Huard’s business was the sale and servicing of television sets and similar appliances. In 1978, Huard’s began renting its merchandise to customers under lease agreements with an option to buy. Huard’s continued to pay rent based on its sales but did not include payment based on *38 its rental revenue. In November of 1981, Huard’s began operating its rental business from a separate location.
Southern States Management Corporation, also named as a defendant in this suit, provides management service for the partnership which owns the shopping center. At Southern’s request, the RaLor Corporation conducted a tenant sales examination of Huard’s for the period from May 1, 1979 through April 30, 1981. The report from that examination indicates that Huard’s had underreported sales in the amount of $306,145 and owed $12,245.80 in percentage rentals. There is apparently no dispute that the underreported amount is the rental revenue taken in by Huard’s during the period covered by the examination.
After a demand for percentage rentals based on rental revenue was made, Huard’s brought this action for a declaratory judgment to determine its obligation under the lease. Made defendants were Ogden, Jones & Douglas and Southern States Management Corporation. The partnership reconvened and demanded additional rent based on the rental revenue and sought an audit for the period from May 1, 1981 through April 30, 1982. Huard’s submitted to the requested audit prior to trial so that issue is not before us.
The second audit report was introduced at trial and indicates that for the period of May 1, 1981 through April 30, 1982, Huard’s underreported sales in the amount of $410,959 and owed $16,438.36 in percentage rentals. We note that both audits include income from the second location of Huard’s. Although we do not consider this issue, it may be that the income from the second location should not have been included.
The trial court decided the issue of percentage rentals in favor of Huard’s determining that the rental revenue should not be considered as part of “gross sales.” The reconventional demand was dismissed. We affirm the judgment of the trial court.
As previously stated, the rent to be paid by Huard’s included 4% of gross sales in excess of $360,000. In defining gross sales, the lease provides:
“The term ‘gross sales’ shall mean the selling price of all merchandise sold or delivered in, at, on, or from any part of the demised premises, and the charges for all services of any sort sold or performed in, at, on, or from any part of the demised premises ...”
In brief on appeal, appellants make the following argument:
“Appellant respectfully submits that the rental and/or leasing of equipment is a service rendered to the consumer such that the remuneration received by HUARD’S, INC. is a ‘charge for all services of any sort, sold or performed in, at, on or from any part of the demised premises,’ as is defined in the terminology ‘gross sales’ in the lease agreement.”
In response to this argument Huard’s asserts, and the trial court so found, that because rental revenue is not clearly included in “gross sales” the lease must be construed in favor of the lessee. Ambiguous phrases in contracts are construed against the party who prepared the contract, in this case the lessor. Rayford v. Louisiana Savings Association, 380 So.2d 1232 (La.App. 3rd Cir.1980), writ denied, 384 So.2d 793 (La.1980). Ambiguities in a lease should be construed in favor of the tenant. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La.1979).
Appellants raise several matters in support of their position that the rental revenue should be included in the percentage rentals to be paid by Huard’s. They assert that the testimony of William Mob-ley, Sr., owner of Huard’s, and William Mobley, Jr., manager, shows that they were aware that percentage rentals would be applied to their renting program. We disagree. The renting program was not begun until well after the lease had been executed and the lease term had begun. Once this controversy arose, the Mobleys apparently chose to move the rental program to another location in order to avoid the conflict. Both Mobleys testified without qualification that they did not believe *39 percentage rentals were owed on the rental revenue.
An exchange of letters between William Mobley, Jr. and Susan Sutherland of Southern States Management make it apparent to us that there was ambiguity in the lease and that some misunderstanding continued between the parties. Mr. Mobley indicated in his letter (P-1) that money from the sale of leased merchandise would be included in “gross sales” but monthly rental payments would not. He requested that if the lease were renewed, he would like an addendum specifically stating this. Ms. Sutherland’s response (P-2) includes the statement that “the total revenues collected are to be added to Huard’s gross sales.” This statement is directly contrary to the clarification proposed by Mr. Mobley.
Appellants also argue that if we accept the term “gross sales” in its common or general use or as a term of art, we must find that rental revenue should be included. We disagree. The term “gross sales” is defined in the lease agreement and the parties are bound by that definition. Under any construction we cannot determine that rental revenue should be included either as a “sale” or a “service,” as those terms are used in the lease. We agree with the trial judge that the lease could have required that a percentage be paid on “all revenue,” in which case there would be no question. The lease required that a record be kept of “all revenue” but that term was not used in the provision for percentage rental. Contrary to appellants' claim, we do not believe that the use of “all revenue” in the record-keeping requirement can be applied to the portion of the lease establishing rental payments, particularly when the lessor chose to use the term “gross sales.”
We note further that after the lease under consideration here expired, Huard’s executed a new lease with another lessor which specifically treats sales and rentals differently, i.e., as different kinds of business enterprises. Although a percentage is paid on both, the percentage rentals under the new lease consist of 4% of gross sales over $750,000 and 1% of rental revenue over $200,000.
Considering all these facts, we agree with the trial court’s disposition of this case. The term “gross sales” does not clearly include rental revenue and must be construed against the lessor.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
AFFIRMED.