GUIDRY, Judge.
This suit arises as a result of a fire which occurred on September 21, 1980, at the home of Edwin and Debra Cabra. This case was consolidated for trial with the case of Edwin L. Cabra, Individually and as Administrator of the Estate of the Minors, Lance Edwin Cabra and Emily *519 Bree Cabra, and Brenda Cabra v. Nutone Corporation, A Division of Scovill Manufacturing Company, et al., in which suit we this day render a separate decree. 461 So.2d 523 (La.App. 3rd Cir.1984).
CNA Insurance Company, the Cabra’s homeowner’s insurer, filed this suit against Victor Scott, Nutone Corporation, a Division of Scovill Manufacturing Company (Nutone) and its insurer, Liberty Mutual Insurance Company, claiming subrogation rights for the amount it paid to the Cabras for the property loss occurring as a result of the fire. The Cabras’ action against the same defendants seeks recovery of the depreciated value of their home as well as damages for the alleged mental anguish which they suffered as a result of the fire. Prior to trial on the merits, Victor Scott died. Plaintiffs took no steps to pursue either matter against the legal successor of Victor Scott. La.C.C.P. Article 801 et seq.
All parties to the companion’ suit moved to have that suit consolidated with this suit brought by CNA Insurance Company. The motions were granted and the consolidated cases were tried before a jury. By unanimous verdict, the jury found for defendants, Nutone and Liberty Mutual Insurance Company, and against all plaintiffs. Judgment was accordingly rendered dismissing both suits with prejudice and at plaintiffs’ cost. Plaintiffs in both suits have appealed. We affirm.
This appeal presents three issues for review:
(1) Whether the jury erred in finding that Nutone was not liable by virtue of the warranty agreement on the Nutone security system;
(2) Whether the jury erred in finding that Victor Scott was not working within the course and scope of his employment with Nutone when he installed the Nutone security system in the Cabra’s home; and,
(3) Whether the jury erred in finding Mrs. Cabra 100% contributorily negligent.
FACTS
There is little dispute over the facts of this case. Mr. and Mrs. Cabra were in the process of building a new home in 1979. While their new home was being constructed, the Cabras lived at the home of friends, Mr. and Mrs. Claude Leach, who were out of the state during this period of time. The Cabras met Victor Scott while staying in the Leach home. Scott was doing repair work on the Leach’s Nutone security system. The Cabras disclosed to Scott their interest in equipping their new home with a burglar and fire alarm system similar to the one in the Leach home. Scott informed the Cabras that he could install a similar system in their new home for a low price. Scott’s bid was lower than any other which the Cabras had received, thus they contracted with him to install the Nutone security system. This particular system consisted of smoke and fire detectors as well as a burglar alarm feature. The system was installed by Scott prior to the completion of the Cabra’s home in November of 1979.
The fire occurred on September 21, 1980. On that evening, Mrs. Cabra had placed four or five baby bottle rings in a saucepan on the kitchen cooktop to be sterilized. Mrs. Cabra failed to turn the burner off before she retired to the bedroom area of the house. The water boiled out of the pan, causing the baby bottle rings to overheat and catch on fire. This, in turn, caused the plastic grating over the stove to fall onto the stove and melt, spreading dense smoke throughout the house. Neither of the two heat detectors in the kitchen were activated by the fire. The Cabras were first apprised of the situation when the smoke detector located on the far end of the home near the bedrooms sounded. Mr. Cabra thereupon went into the kitchen and extinguished the fire. By this time, the entire house was filled with smoke.
CNA Insurance Company paid $9,118.78 to the Cabras for the loss occasioned by the fire. It was stipulated to and agreed upon by all parties to this suit that this sum constituted fair and reasonable compensation for the damages to the Cabra home. All parties also agreed to the fact that the *520 Nutone system in the Cabra home was not defective. The testimony at trial clearly showed that the sole cause for the failure of the heat and smoke detectors at the time of the fire was that they were improperly installed by Scott. Had the system been properly installed, the evidence indicated that the detectors would have operated as intended.
WARRANTY
The first assignment of error by the plaintiffs is that the jury erred in finding that Nutone was not liable under the warranty provisions of the Nutone security system. The warranty on the “Nutone Intruder/Fire Alarm System” provides in pertinent part as follows:
“Our warranty does not cover damage or failure caused by Acts of God, abuse, misuse, abnormal usage, faulty installation, improper maintenance or any repairs other than those provided by an Authorized Nutone Service Center....”
Plaintiffs contend that this provision is ambiguous and that it could be construed to mean that the warranty covers damage or failure resulting from faulty installation provided by an Authorized Nutone Service Center. Under this interpretation, Nutone would be liable to the Cabras since their system was installed by an Authorized Nu-tone Service Center, Victor Scott. The plaintiffs assert that this ambiguity should be construed in a light most favorable to them since Nutone drafted the warranty.
In our view, the provisions of the warranty quoted above are clear and unambiguous. The warranty states that it does not apply if the damages or failure are caused by any of the following:
Acts of God
abuse
misuse
abnormal usage
faulty installation
improper maintenance
any repairs other than those provided by an Authorized Nutone Service Center.
Each of these enumerated causes is separate and distinct from the other, as is evidenced by the use of commas between them. The assertion that the qualifying phrase “other than those provided by an Authorized Nutone Service Center” relates back to “faulty installations” is unreasonable in light of the entire sentence structure. Under this rationale, it would follow that such phrase would relate back to each separate cause listed in the warranty. This interpretation would lead to absurd results. If the warranty is to be read as plaintiffs contend, then it necessarily follows that it could also be read to mean: Our warranty does not cover damages or failure caused by Acts of God other than those provided by an Authorized Nutone Service Center.
Our jurisprudence is clear that when a contract is susceptible of two conflicting but reasonable interpretations, the ambiguous phrase is to be strictly construed against the party who prepared the contract. La.C.C. Arts. 1957 and 1958. Par-Co. Drilling, Inc. v. Franks Petroleum, Inc., 360 So.2d 642 (La.App.3rd Cir.1978); Rayford v. Louisiana Savings Association, 380 So.2d 1232 (La.App.3rd Cir.1980), writ denied, 384 So.2d 793 (La.1980). However, in the instant case, we find that there is no ambiguity in the provisions of the warranty. There is but one reasonable interpretation in light of the entire warranty, i.e., that the qualifying phrase refers only to repair work provided by Authorized Nu-tone Service Centers. In furtherance of this conclusion is the fact that Authorized Nutone Service Centers are only authorized by Nutone to perform in-warranty repair work. It would thus be contradictory for Nutone to warrant installation work performed by its Authorized Nutone Service Centers when they are neither authorized nor compensated by Nutone for'doing such. For these reasons, we find no error in the jury’s conclusion that Nutone is not responsible under its warranty agreement with the Cabras.
COURSE AND SCOPE OF EMPLOYMENT
Plaintiffs next argue that the jury erred in finding that Victor Scott was not work *521 ing within the course and scope of his employment or acting as an agent for Nu-tone at the time he installed the Nutone system in the Cabra home.
Victor Scott became an Authorized Nu-tone Service Center in August of 1975. As such, he was responsible for doing Nu-tone’s in-warranty repair work for the Alexandria-Leesville area of Louisiana. At the time he was the only Authorized Nu-tone Service Center for the entire area. The evidence at trial established that Scott’s scope of authority was clearly delineated by Nutone. Scott’s sole responsibility to Nutone was to do in-warranty repair work on Nutone products in the designated area. Scott was provided with a decal to place on his service truck which designated him as an Authorized Nutone Service Center. The service agreement which Scott entered into with Nutone expressly authorized him to perform in-warranty repair work and nothing more. This agreement also set forth the rate structure which Scott was to abide by. Scott was paid directly by Nutone for the in-warranty repair work he performed once he sent in a service report and such report was approved by the regional service manager. If Scott was called upon to do any out-of-warranty repair work, he was paid directly by the customer and had no obligation to Nutone.
Plaintiffs contend that although Scott was not specifically authorized by Nutone to perform installation of their system, he was vested with the apparent authority to do so by virtue of his position as an Authorized Nutone Service Center.
Scott was a retired construction electrician at the time he became an Authorized Nutone Service Center. Mrs. Scott indicated at trial that this was just a part-time job for her husband and that he did not even make enough money from his repair work to file income taxes. The average time which Scott spent doing in-warranty repair work for Nutone was only a couple of hours per week. This left a considerable amount of time remaining for his own personal endeavors. Mrs. Scott also stated at trial that her husband was not hired by Nutone as an installation man.
Mr. and Mrs. Cabra testified that they relied on Scott’s representations to them because he was an Authorized Nutone Service Center and that he could install the Nutone security system at a lower price than anyone else. The Cabras assert that Scott told them that since he could deal directly with the factory, he could guarantee them a better price on the Nutone system they wanted. Scott’s bid for the installation job was indeed lower than all of the other bids, including another bid on the same Nutone security system.
A principal may be bound for the acts of an agent who acts with actual'or apparent authority. Apparent authority is a concept of estoppel operating in favor of a third person seeking to bind a principal for the unauthorized act of an agent. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973). The burden of proving apparent authority is on the person seeking to bind the principal. Vermilion Bank and Trust Co. v. Miller, 284 So.2d 662 (La.App.3rd Cir.1973).
The judicially created doctrine of apparent authority has two requirements:
(1) The principal must make some form of manifestation to an innocent third party; and,
(2) The third party must rely reasonably on the purported authority of the agent as a result of the principal’s manifestations.
Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App.3rd Cir.1982).
In this case, there was no manifestation made by Nutone which would lead the Cabras to believe that Victor Scott had the authority to install their Nutone security system. Nutone, in fact, went out of its way to keep its service centers separate and distinct from its sales departments. The decal which Nutone provided for Scott read, “Authorized Nutone Service Center.” The word “sérvice” does not imply sales or installation authority. Nutone also provided the public with a toll-free telephone *522 number, listed in the telephone directory as “Nutone DIV. OF SCOVILL MFG CO— Sales and Service Information,” through which one could obtain information about Nutone products. Nutone purposefully directed any callers either to a local distributor if sales information was sought or to a local service center if repair work was desired. Additionally, Nutone only sold its products through distributors. Contrary to the alleged representation made by Scott to the Cabras, Service Centers could not buy Nutone products directly from Nutone’s factory. Such products could only be obtained through a local distributor.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely on the assertions of an agent. He has a duty to inquire into the nature and extent of the powers of the agent. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (La.1957). The Cabras failed to inquire into the extent of Scott’s authority. Had they done so, they would have been informed of the fact that his authority as agent for Nutone was limited to in-warranty repair work. Nutone was not responsible for nor could it limit any activities which Scott, or any of its part-time service centers, undertook on their own time, and for their own profit. Scott was paid directly by the Cabras for the installation job. Any profit he made was strictly his own and Nutone received none of the proceeds.
We therefore hold that the jury’s finding that Scott was not within the course and scope of his employment at the time he installed the Nutone security system in the Cabra home was correct. Whatever appearance of authority Scott presented to the Cabras arose strictly from Scott’s actions and not from Nutone.
CONTRIBUTORY NEGLIGENCE
The plaintiffs’ final assignment of error is that the jury erred in finding Mrs. Cabra to be 100% contributorily negligent. In answer to special interrogatories, the jury found that:
“(1) Victor Scott was negligent and his negligence was a proximate cause of the accident, occurrence or loss;
(2) Victor Scott was an employee or agent of Nutone Corporation on the date of installation of the Nutone Security System;
(3) Victor Scott was not working within the course and scope of his employment or acting as an agent for Nutone Corporation relative to the services he performed for Mr. and Mrs. Cabara;
(4) Nutone Corporation was not liable to the plaintiffs under/or by virtue of the warranty agreement on the Nutone Security System;
(5) Mrs. Brenda Cabra was guilty of contributory negligence which was a cause of the accident, occurrence or loss;
(6) Mrs. Brenda Cabra’s negligence contributed 100% to the damages sustained;
(7) Edwin L. Cabra, individually and as administrator of the estate of his minor children, and Brenda Cabra, individually, were not entitled to damages against the defendants as a result of the fire.”
Since we have already expressed our agreement with the jury’s finding that Nu-tone is not liable to the Cabras under the warranty agreement nor by way of apparent authority, we need not address the question of Mrs. Cabra’s contributory negligence. Had Scott’s legal successor been substituted as a party defendant to this suit, it would have been a viable issue.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellants’ cost.
AFFIRMED.